IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-1906C |
| v. | ) | (Judge Block) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

TODD M. HUGHES
Assistant Director

KELLY B. BLANK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St, N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys for Defendant

Of Counsel:

ELIZABETH RIVERA
Counsel
Fleet and Industrial Supply Center
1942 Gaffney St.
Suite 100 .
Pearl Harbor, HI 96860
Tele: (808) 473-4144
Fax: (808) 473-2797

November 24, 2004

## TABLE OF CONTENTS


| | PAGE(S) |
|---|---|
| STATEMENT OF THE ISSUES | 2 |
| STATEMENT OF THE CASE | 2 |
| I. Nature Of The Case | 2 |
| II. Statement Of The Facts | 2 |
| ARGUMENT | 7 |
| I. Standard Of Review | 7 |
| A. RCFC 12(b)(1) Motion To Dismiss | 7 |
| B. RCFC 56 Summary Judgment | 8 |
| II. This Court Lacks Subject Matter Jurisdiction To Entertain AHAC's Claims Because AHAC, As A General Liability Insurer, Is Not Equitably Subrogated To Pacific Machinery | 9 |
| III. Plaintiff's Tort Claims Should Be Dismissed Where They Are Not Directly Connected To The Parties' Contractual Obligations | 15 |
| CONCLUSION | 20 |


## INDEX TO APPENDIX


| DOCUMENT | PAGE(S) |
|---|---|
| Contract No. N00604-00-P-A015 | 1-36 |
| October 27, 1999 Contract Modification No. 1 | 37 |
| December 15, 1999 Contract Modification No. 2 | .38-39 |
| December 23, 1999 Contract Modification No. 3 | .40-43 |
| July 14, 2000 Contract Modification No. 4 | 44-45 |
| May 10, 2002 Contract Disputes Act Claim from Pacific Machinery | 46-58 |

May 10, 2002 Federal Tort Claims Act Claim from Pacific Machinery ............................... 59-61

June 25, 2002 Claims Officer's Decision ........................................................................... 62

September 10, 2002 Contracting Officer's Final Decision .................................................. 63-67

Insurance Policy No. 6414323 between Pacific Machinery and AHAC ............................... 68-73

## TABLE OF AUTHORITIES

## FEDERAL CASES

**PAGE(S)**

Aetna Casualty & Surety Co. v. United States,
228 Ct. Cl. 146 (1981) ........................................................................................ 9

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........................................................................................ 8, 15

Balboa Insurance Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) ........................................................................ 12, 13

Brown v. United States,
105 F.3d 621 (Fed. Cir. 1997) ........................................................................... 16

C.B.C. Enterprises, Inc. v. United States,
24 Cl. Ct. 1 (1991) ........................................................................................ 17

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ........................................................................................ 8

Chancellor Manor v. United States,
331 F.3d 891 (Fed. Cir. 2003) ........................................................................... 12

Conley v. Gibson,
355 U.S. 41 (1957) ........................................................................................ 7

Cubic Def. System Inc. v. United States,
45 Fed. Cl. 239 (1999) ........................................................................................ 7

DeRoo v. United States,
12 Cl. Ct. 356 (1987) ........................................................................................ 17

Dynalectron Corp. v. United States,
4 Cl. Ct. 424 aff'd, 758 F.2d 665 (Fed. Cir. 1984) .......... 9

Eastport Steamship Corp. v. United States,
178 Ct. Cl. 599, 372 F.2d 1002 (1967) .......... 10

Federal Insurance Co. v. United States,
29 Fed. Cl. 302 (1993) .......... 13, 14

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983) .......... 9

Fireman's Fund Insurance Co. v. England,
313 F.3d 1344 (Fed. Cir. 2002) .......... 11, 12

First Hartford Corp. Pension Plan & Trust v. United States,
42 Fed. Cl. 599 (1998) .......... 13

Golden Pacific Bancorp. v. United States,
15 F.3d 1066 (Fed. Cir. 1994) .......... 8

H.H.O., Inc. v. United States,
7 Cl. Ct. 703, 706 (1985) .......... 17, 20

Indium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986) .......... 7

Insurance Company of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) .......... 9, 12, 14

Jeppesen Sanderson, Inc. v. United States,
19 Cl. Ct. 233 (1990) .......... 17

Lee v. United States,
33 Fed. Cl. 374 (1995) .......... 16

Library of Congress v. Shaw,
478 U.S. 310 (1986) .......... 9

Maniere v. United States,
31 Fed. Cl. 410 (1994) .......... 7

Merritt v. United States,
267 U.S. 338 (1925) .......... 10

National Leased Housing Associates v. United States,
105 F.3d 1423 (Fed. Cir. 1997) .......... 10

National Surety Corp. v. United States,
31 Fed. Cl. 565 (1994) .......... 8

Reynolds v. Army & Air Force Exch. Service,
846 F.2d 746 (Fed. Cir. 1988) .......... 7

Scheuer v. Rhodes,
416 U.S. 232 (1974) .......... 7

Shearin v. United States,
992 F.2d 1195 (Fed. Cir. 1993) .......... 16

Somali Development Bank v. United States,
508 F.2d 817 (Ct. Cl. 1974) .......... 17

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84 (1989) .......... 8

Sweats Fashion, Inc. v. Panhill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) .......... 8

Thomas Creek Lumber & Log Co. v. United States,
36 Fed. Cl. 220 (1996) .......... 8

Town of Floyd v. United States,
34 Fed. Cl. 170 (1995) .......... 18

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983) .......... 10

United States v. King,
395 U.S. 1 (1969) .......... 9

United States v. Nordic Village, Inc.,
503 U.S. 30 (1992) .......... 9

United States v. Sherwood,
312 U.S. 584 (1941) .......... 9

United States v. Testan,
424 U.S. 392 (1976) .......... 9, 10

Westech Corp. v. United States,
20 Cl. Ct. 745, 751 (1990) .......... 14

**FEDERAL STATUTES**

28 U.S.C. § 1346(b) .......... 16

28 U.S.C. § 1491 .......... 9, 10

28 U.S.C. § 1491(a)(1) .......... 16

31 U.S.C § 3727(a)(1)(b) .......... 11

41 U.S.C § 15(a) .......... 11

41 U.S.C § 601 .......... 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-1906C |
| v. | ) | (Judge Block) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS OR, IN
THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1) and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiff, American Home Assurance Company ("AHAC"), as a party to the complaint because plaintiff is neither in privity of contract with the Government, nor is plaintiff equitably subrogated to the rights of a contractor who does have privity. Accordingly, AHAC's status as plaintiff is not within the limited subject matter jurisdiction of this Court, and this party should be dismissed.

In the alternative, defendant respectfully requests that the Court enter partial summary judgment in the Government's favor against both plaintiffs upon the grounds that there is no genuine issue of material fact, and defendant is entitled to judgment as a matter of law, upon those allegations in the complaint which sound in tort, and are not directly connected to the Government's obligations pursuant to the contract at issue. In support of this motion, we rely upon the complaint, Defendant's Proposed Findings of Uncontroverted Fact, and the following brief and appendix.[1]

---

[1] "Compl. ¶ ___" refers to a paragraph of the complaint filed on August 11, 2003. "Def. App. ___" refers to a page within the appendix accompanying this brief. "DPFUF ¶ __" refers to a

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUES

1. Whether plaintiff, American Home Assurance Company, as a matter of law, cannot recover under the doctrine of equitable subrogation because it is the contractor's general liability insurer, and not a surety?

2. Whether defendant is entitled to partial summary judgment upon those of plaintiffs' claims which sound exclusively in tort and are not directly connected to the parties' contractual obligations?

## STATEMENT OF THE CASE

### I. Nature of The Case

Plaintiffs, Pacific Machinery, Inc. and American Home Assurance Company, Pacific Machinery's general insurer, filed this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq. American Home Assurance Company requests $141,457.77, the amount for which AHAC indemnified Pacific Machinery for property damage, $36,000.00 for loss of rental payments, and $3,680.07 for storage and moving fees. Compl. ¶ 22. Pacific Machinery requests $50,000.00, the amount of its deductible pursuant to its insurance policy with AHAC, for property damage. Compl. ¶ 23.

### II. Statement Of The Facts

On October 1, 1999, the United States Department of the Navy ("Navy") awarded Contract No. N00604-00-P-A015 to Pacific Machinery for the rental of one 131' manlift ("CLIN 0001"), and

---

specific paragraph in Defendant's Proposed Findings of Uncontroverted Fact.

one 106' manlift ("CLIN 0002"), from October 1, 1999, through September 30, 2000, at the Pearl Harbor Naval Shipyard in Pearl Harbor, Hawaii. Def. App. 1-4. The contract expressly incorporated the terms of Solicitation No. N00604-99-T-A217, issued by the Navy on September 29, 1999, as well as Pacific Machinery's reply quote, dated September 29, 1999. Def. App. 2.

In the contract's "Rental" clause, the parties agreed that,

> [n]o rent shall accrue with respect to any property furnished by the Contractor which the Contracting Officer determines is not of satisfactory quality or in good operating condition, under the terms of the clause entitled 'Condition of the Rented Property', unless and until such property is replaced or the . . . defects are corrected. No rent shall accrue with respect to any property . . . during any period when such property is unusable as a result of the failure of the Contractor to render services in connection with operation and maintenance of the equipment as hereinafter required.

Def. App. 9. The "Condition of Rented Property" clause of the contract provided that, "[t]he contractor shall furnish rented property which is of good quality and in first-class operating condition, and the Government shall promptly inspect and accept or reject said property." Def. App. 9. Finally, the contract provided that, "[e]xcept for reasonable wear and tear, the Government agrees to return the rented property in as good condition as when received, provided, however, if the rented property is operated by an employee of the contractor, the Government shall not be liable for damage to the rented property incident to such operation." Def. App. 10.

On October 27, 1999, the contracting officer issued modification number one to the contract, deleting clause 52.232-18 regarding the availability of funds. Def. App. 37. On December 17, 1999, Pacific Machinery and the Navy executed modification number two, a bilateral modification cancelling CLIN 0002, the rental of one 106' manlift, from the contract, effective December 15, 1999. Def. App.

38.

On December 23, 1999, Pacific Machinery and the Navy executed modification number 3, a bilateral modification adding the rental of one 131' manlift ("CLIN 0004") to the contract from January 1, 2000, through September 30, 2000, as well as hauling fees for the 131' manlift ("CLIN 0005"). Def. App. 40-42. CLIN 0004 provided that Pacific Machinery would lease to the Navy one self-propelled aerial work platform, or manlift, Grove Model AMZ131XT, Serial Number 46173. Compl. ¶ 6; Def. App. 41.

The particular manlift added to the contract as CLIN 0004 was previously leased to the Navy under separate contracts. The Navy rented the Grove Model AMZ131XT, Serial Number 46173, from August 30, 1999, through October 29, 1999, pursuant to Contract No. N00-604-99-P-E358. Def. App. 64. Accordingly, on August 30, 1999, Pacific Machinery delivered the manlift to the Pearl Harbor Naval Shipyard, citing Contract No. N00-604-99-P-E358 upon the delivery invoice. Def. App. 57. Upon delivery, Nephi Akina, a shipyard planner, signed Pacific Machinery's invoice for receipt of the manlift. Id.

Pacific Machinery continued to lease the Grove Model AMZ131XT, Serial Number 46173, to the Navy from November 1, 1999, through December 31, 1999, pursuant to Contract No. N00604-00-P-A263. Def. App. 64. On January 1, 2000, the Government rented the Grove Model AMZ131XT, Serial Number 46173, from Pacific Machinery pursuant to the contract at issue in this case. Def. App. 40-41.

On May 20, 2000, Leroy Fujii, a naval employee, was killed in an accident while operating the manlift provided in CLIN 0004 of the contract, the Grove Model AMZ131XT, Serial Number 46173.

Compl. ¶¶ 13, 14. As a result of the accident, the manlift was damaged. Id.

On July 14, 2000, Pacific Machinery and the Navy executed modification number 4, a bilateral modification terminating the remaining 4-month rental period for one 131' manlift and, accordingly, reducing the total contract price by $36,000.00. Def. App. 44-45. Mod. 4 also included language providing that Pacific Machinery "releases, remises, and forever discharges the Government of and from all manner of actions . . . which the contractor ever had, now has, and may have . . . arising out of Modification P00004 to contract N00604-00-P-A015." Def. App. 45.

Effective July 1, 1999, AHAC issued an insurance policy, No. 6414323, for a term of one year whereby AHAC agreed to insure Pacific Machinery against losses resulting from property damage including, among other things, business interruption and rental income. Def. App. 68-69; Compl. ¶ 8. The insurance agreement entered into by AHAC and Pacific Machinery included a subrogation clause providing that,

> [i]f, in the event of loss or damage, the Insured [Pacific Machinery] shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, the Insured will, if requested by the Company [AHAC], assign and transfer such claim or right of action to [AHAC] . . . and will subrogate [AHAC] to, or will hold in trust for [AHAC] all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of [AHAC].

Def. App. 69.

On May 10, 2002, Pacific Machinery submitted a claim to the contracting officer, pursuant to the Contract Disputes Act ("CDA"), seeking $227,477.77 for property damage to the manlift and loss

of monthly rental payments.[2] Def. App. 49, 55. In its claim, Pacific Machinery alleged, among other things, that the Government breached the contract by not returning the manlift to Pacific Machinery in as good condition as it had been received. Def. App. 50-51.

On May 10, 2002, Pacific Machinery also submitted an administrative claim to the Navy under the Federal Tort Claims Act ("FTCA") seeking $290,366.77 for property damage to the manlift. Def. App. 59-61. Pacific Machinery claimed that it was entitled to recovery under the FTCA for physical damage to the manlift, loss of monthly rental payments, and lost rental income because the Government was allegedly "negligent in operating the Grove AMZ131XT manlift" by failing to perform proper operating procedures, properly train manlift operators, and warn operators of potential hazards. Def. App. 61.

On June 25, 2002, the Navy denied Pacific Machinery's tort claim because "[f]ederal employees did not cause the damage or injury through negligence in the course and scope of federal employment." Def. App. 62.

On September 10, 2002, James B. Powers, the contracting officer, issued a final decision denying Pacific Machinery's CDA claim. Def. App. 63. Pacific Machinery and its general liability insurer, American Home Assurance Company, filed a complaint in this Court on August 11, 2003. AHAC seeks damages in the amount of $141,457.77, the amount for which AHAC indemnified Pacific Machinery for property damage pursuant to Pacific Machinery's insurance policy, $36,000.00 for loss of rental payments, and $3,680.07 for storage and moving fees. Pacific Machinery seeks damages of

---

[2] AHAC has not filed a CDA claim with the contracting officer.

$50,000.00, the amount of its deductible under the insurance policy issued to it by AHAC.

## ARGUMENT

### I. Standard of Review

#### A. RCFC 12(b)(1) Motion to Dismiss

In general, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Subject matter jurisdiction, however, may be challenged by the parties or raised by the Court at any time, and, if jurisdiction is found to be lacking, the Court must dismiss the action. See RCFC 12(h)(3).

In evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). Notwithstanding this general rule, it is well settled that where the movant challenges specific jurisdictional facts set forth in the complaint, the Court may consider all relevant evidence (including matters not raised in the pleadings) and make any factual findings necessary to resolve the issue of jurisdiction. See, e.g., Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986); Maniere v. United States, 31 Fed. Cl. 410, 413 (1994). Where the underlying jurisdictional facts are challenged, plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence. See, e.g., Cubic Def. Sys. Inc. v. United States, 45 Fed. Cl. 239, 245 (1999).

B. RCFC 56 Summary Judgment

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Golden Pacific Bancorp. v. United States, 15 F.3d 1066, 1070 (Fed. Cir. 1994); Thomas Creek Lumber & Log Co. v. United States, 36 Fed. Cl. 220, 234 (1996); Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 n.1 (1989). A dispute over a "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Furthermore, "there is no genuine dispute where the evidence 'is so one-sided that one party must prevail as a matter of law.'" National Surety Corp. v. United States, 31 Fed. Cl. 565, 570 (1994)(quoting Anderson, 477 U.S. at 252).

Where a motion for summary judgment is made, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact . . . [Rather,] 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the [Court of Federal Claims] - that there is an absence of evidence to support the non-moving party's case'." Sweats Fashion, Inc. v. Panhill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987)(emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Where materials beyond the pleadings are considered, a motion to dismiss will be considered a motion for summary judgment. RCFC 12(c).

Finally, summary judgment is not regarded as a disfavored procedural short cut, "but rather an integral part of the court rules as a whole." Celotex Corp. v. Catrett, 477 U.S. at 327; Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989). Indeed, summary judgment is wholly consistent with the rules of this Court, which are "designed to secure a just, speedy, and inexpensive determination of each and every action." Spirit Leveling, 19 Cl. Ct. at 89.

II. This Court Lacks Subject Matter Jurisdiction to Entertain AHAC's Claims Because AHAC, As A General Liability Insurer, Is Not Equitably Subrogated To Pacific Machinery

Like its predecessors, this is a Court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984)(Table). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941); Insurance Company of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir. 2001).

Congressional consent to suit in this Court, a waiver of the Government's traditional immunity, must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); United States v. King, 395 U.S. 1 (1969); Fidelity Construction Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399; United States v. King, 395 U.S. at 1; Insurance Company of the West, 243 F.3d at 1372. When confronted with a jurisdictional issue, the Court's "task is to discern the 'unequivocally expressed' intent of Congress, construing ambiguities in favor of immunity." United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992).

The Tucker Act, 28 U.S.C. § 1491, defines the general jurisdiction of the Court of Federal Claims. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Under that statute, an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or

unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982).

Further, it is axiomatic that the Tucker Act does not create any substantive right of recovery against the United States for money damages. Testan, 424 U.S. at 398; Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967). Rather, it merely confers jurisdiction upon the Court whenever the substantive right exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc). A claimant, therefore, must look beyond this jurisdictional statute and establish some substantive provision of law, regulation, or the Constitution, which can fairly be construed as mandating compensation, to state a claim within the jurisdiction of this Court. Connolly, 716 F.2d at 885.

Thus, jurisdiction to entertain AHAC's complaint exists in this Court only if AHAC can establish that its cause of action lies within the well-established limitations of this Court's jurisdiction. To invoke this Court's jurisdiction over its contract claim, AHAC must demonstrate privity of contract between itself and the United States. Merritt v. United States, 267 U.S. 338, 340-41 (1925) (no jurisdiction pursuant to the Tucker Act because there was no privity between the subcontractor and the United States); National Leased Hous. Assoc. v. United States, 105 F.3d 1423, 1435-47 (Fed. Cir. 1997) (privity of contract is required to establish jurisdiction).

In this case, there is no privity of contract between the Government and AHAC because it was not a party to the agreement between the Government and Pacific Machinery, and did not enter into contract directly with the Government. Rather, AHAC alleges that it may avail itself of this Court's jurisdiction as Pacific Machinery's "subrogee," and because it "issued a policy of insurance no. 6414323 to Pacific Machinery providing coverage for the Manlift." Compl. ¶ 8.

The gist of the insurer's complaint here is that it is equitably subrogated to Pacific Machinery's rights because it issued a liability insurance policy to Pacific Machinery that contains a subrogation clause. The agreement between AHAC and Pacific Machinery states,

> [i]f, in the event of loss or damage, the Insured [Pacific Machinery] shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, the Insured will, if requested by the Company [AHAC], assign and transfer such claim or right of action to [AHAC] . . . and will subrogate [AHAC] to, or will hold in trust for [AHAC] all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of [AHAC].

Def. App. 69. However, because the Government is not a party to this agreement, and the agreement is not a valid assignment under the Anti-Assignment Act, the agreement itself does not confer rights upon AHAC as a subrogee in this Court.

The assignment of claims under Government contracts is generally prohibited by what is commonly called the Anti-Assignment Act. That Act is composed of two provisions, 41 U.S.C. § 15(a), and 31 U.S.C. § 3727(a)(1),(b). <u>See</u> <u>Fireman's Fund Insurance Co. v. England</u>, 313 F.3d 1344, 1349-1350 (Fed. Cir. 2002). Under that Act, as applicable here, generally the voluntary assignment of any claim, except to a financing institution, is prohibited. <u>See</u> <u>Fireman's Fund</u>, 313 F.3d at 1350 ("Fireman's Fund is not a 'financing institution,'" under the Anti-Assignment Act, but instead "an insurance company writing insurance policies that protect against risks"). As the Federal Circuit explained, "[t]he assignment by [the contractor] of 'all of their rights under the contracts' violated the prohibition in 41 U.S.C. § 15(a) against the transfer of 'any interest' in any contract involving the United States." <u>Fireman's Fund</u>, 313 F.3d at 1349. Thus, the only claims that AHAC can bring against the

United States are those claims the contractor had against the Government and which pass by operation of law, under equitable subrogation. This subrogation does not extend to any claim based upon rights "voluntarily" assigned by Pacific Machinery to AHAC.

This Court has interpreted the Tucker Act to permit a surety to avail itself of the Court's jurisdiction under the doctrine of equitable subrogation. Absent privity of contract, or third-party beneficiary status,[3] a surety may assert a claim against the Government upon "a three-party agreement, whereby one party (the surety) becomes liable for the principal's or obligor's [contractor's] debt or duty to the third party obligee [Government]." Balboa Insurance Co. v. United States, 775 F.2d 1158, 1160-1161 (Fed. Cir. 1985). As the Court of Appeals for the Federal Circuit recently observed, "[w]e have specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the [G]overnment: when the surety takes over contract performance or when it finances completion of the defaulted contract." Insurance Company of the West, 243 F.3d at 1370 (citations omitted). This succession, or assignment of rights by operation of law, appears to be the basis upon which the "non-contractual doctrine of equitable subrogation" is founded. Fireman's Fund, 313 F.3d at 1351 (citation omitted). From this it necessarily follows that, absent take over of the contract or financing completion of the contract via its performance bond, the surety is not equitably

---

[3] The complaint has neither alleged nor demonstrated that AHAC is an identified, direct third-party beneficiary of a Government contract as a basis for establishing privity with the United States. See Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003) ("in order to prove third-party beneficiary status, Appellants must demonstrate that the contract not only reflects an express or implied intention to benefit the party, but that it reflects an intent to benefit the party directly"). The primary, direct beneficiaries of the contract between the Government and Pacific Machinery were the parties themselves, not the contractor's general insurer.

subrogated to the rights of the prime contractor.

This Court has not recognized an insurer's right to sue upon a general liability insurance contract with a private party that does not constitute a three-party agreement analogous to a suretyship arrangement. Federal Insurance Co. v. United States, 29 Fed. Cl. 302, 304-05 (1993); see also First Hartford Corp. Pension Plan & Trust v. United States, 42 Fed. Cl. 599, 611-12 (1998), rev'd upon other grounds, 194 F.3d 1279 (Fed. Cir. 1999) (shareholder may not sue as a surety where it has not taken over contract performance owed to the Government, but merely purports to take over the right to sue the Government).

In Federal Insurance, the Court held that the Tucker Act did not permit an insurance company to sue the Postal Service in its own name upon the insured's Government contract simply because the insurance policy contained a subrogation clause conferring a right to sue the Government upon the insurer. Federal Insurance, 29 Fed. Cl. at 305-06. The Court reasoned that, because the Tucker Act only authorizes suit by a person who stands in the shoes of a contractor, an insurer with "no direct responsibility for contract performance and no other obligation owed directly to the government" may not maintain suit under equitable subrogation. Id. at 306.

Similarly, AHAC's insurance contract with Pacific Machinery "creates rights and obligations that run exclusively" between AHAC and Pacific Machinery. Id. at 305. A surety's duty under a performance bond is to the obligee, which is the Government, not the contractor. Balboa Insurance, 775 F.2d at 1160-1161. In this case, AHAC's obligation only runs to its insured to pay claims pursuant to an insurance policy. The insurance agreement, however, does not purport to place AHAC in Pacific Machinery's shoes with respect to Pacific Machinery's obligations to the Government. Unlike

a three-party surety agreement, if Pacific Machinery had failed to perform upon its contract with the Government, the Navy could not have demanded that AHAC complete performance pursuant to the insurance contract between AHAC and Pacific Machinery.

In Insurance Company of the West, the Court of Appeals defined the waiver of sovereign immunity found in the Tucker Act insofar as it relates to a surety. The scope of that waiver was based upon the conclusion that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." Insurance Company of the West, 243 F.3d at 1375 (emphasis added). The Court also stated that the subrogee, as an assignee by operation of law, has "the same right[s]" as the Government contractor, "with its advantages and disadvantages." Id. at 1374 (emphasis added). Given the requirement that the surety "step[] into the shoes of a government contractor," Id. at 1375, there is little room to argue that the Tucker Act's waiver extends beyond a takeover surety or one who effectively completes the project by financing its completion under its performance bond. In the instant case, the general liability insurer did neither, for which reason it is not equitably subrogated to the rights of Pacific Machinery.

As the facts demonstrate, in this case AHAC paid Pacific Machinery pursuant to the insurance policy issued upon behalf of Pacific Machinery, nothing more. This singular act did not convert AHAC's actions into anything other than payment pursuant to its obligations under Pacific Machinery's insurance policy.

The purpose of a surety agreement is "simply to ensure completion of the government's project." Westech Corp. v. United States, 20 Cl. Ct. 745, 751 (1990)(citation omitted); See also Federal Insurance, 29 Fed. Cl. at 304 ("the rationale for finding a waiver of sovereign immunity for

government contract sureties . . . appears narrow in scope and would not apply to a general liability insurer"). Permitting recourse by a general liability insurer against the Government, where the insurer neither takes over nor finances completion of contract performance, converts the Government into the insurance company's surety against losses that the insurance company agreed to indemnify upon acceptance of the contractor's premiums. Here, the liability insurer bore the risk that it was paid to bear when Pacific Machinery paid the premiums for insurance coverage. The question of loss under the insurance policy issued to Pacific Machinery should be a matter to be resolved between the insurer, and the contractor that it indemnified and that caused the loss.

Thus, AHAC did not complete the contract performance of its insured; nor did it effectively complete the contract performance by paying for completion of contract performance under a performance bond. As such, AHAC is not in privity with the Government and further fails to meet the criteria established to bring an equitable subrogation claim against the Government. Given this fact and the fact that AHAC was never a "contractor" for the Government, there is no basis for this Court to exercise jurisdiction over AHAC's claim.

## III. Plaintiffs' Tort Claims Should Be Dismissed Where They Are Not Directly Connected To The Parties' Contractual Obligations

Despite styling their complaint as one for breach of contract, plaintiffs in fact allege numerous claims which sound solely in tort. Because there is no genuine dispute of material fact regarding whether the Government's contractual obligations prohibited the allegedly tortious conduct cited in the complaint, summary disposition of plaintiffs' tort claims is appropriate. See Anderson, 477 U.S. at 248.

It is well settled that this Court does not possess jurisdiction to entertain tort actions. See

Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997); Shearin v. United States, 992 F.2d 1195, 1197 (Fed. Cir. 1993). In fact, the Tucker Act expressly excludes tort claims from the Court's jurisdiction. 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort.) (emphasis added). The United States District Courts possess exclusive jurisdiction to hear tort claims. 28 U.S.C. § 1346(b).[4]

The complaint sets forth several claims that are tortious in nature. These include:

> A. Defendant's failure to properly train operators of the Manlift and to ensure that it was operated at all times by a fully qualified operator . . .
> C. Defendant's failure to follow the manufacturer's instructions and/or recommendations for safe use of the Manlift;
> D. Defendant's failure to use, operate, maintain, repair and care for the Manlift in a careful and prudent manner;
> E. Defendant's failure to keep and maintain the Manlift in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies . . .

Compl. ¶ 15. Because the above claims sound in tort, and are not directly connected to the Government's obligations pursuant to the terms of the contract at issue, the Court should enter partial summary judgment in favor of the Government dismissing these claims.[5]

Although plaintiffs attempt to characterize these allegations as breach of contract claims, their

---

[4] On March 25, 2003, the United States District Court for the District of Hawaii dismissed Pacific Machinery's third-party complaint against the Government for stating a contract, not a tort, claim. The district court's dismissal, however, does not confer jurisdiction upon this Court. Lee v. United States, 33 Fed. Cl. 374, 380 (1995) ("[a]nother court's jurisdictional determination cannot confer jurisdiction on this or any other court.")

[5] For the purposes of this motion only, the Government does not request dismissal of plaintiffs' claims relating to defendant's alleged "failure to perform pre-operation inspections," defendant's alleged "failure to deliver the Manlift at Defendant's sole cost and expense to Pacific Machinery . . . in as good condition as originally received," or defendant's alleged "failure to continue monthly rental payments to the date on which the contract expired." Compl. ¶ 15.

claims constitute tort causes of action. This Court has long held that "claims based on . . . the careless performance of a duty allegedly owed, are claims sounding in tort." Somali Development Bank v. United States, 508 F.2d 817, 821 (Ct. Cl. 1974); see also DeRoo v. United States, 12 Cl. Ct. 356, 362 (1987) (dismissing claim that HUD officials negligently failed to insure a loan after issuing a conditional commitment.)

The Court, however, has allowed "jurisdiction over claims which, although perhaps somewhat 'tortious' in nature, are essentially based upon the breach of a contractual obligation." DeRoo, 12 Cl. Ct. at 362 (quoting H.H.O., Inc. v. United States, 7 Cl. Ct. 703, 706 (1985)). The Court has distinguished between tortious breach of contract claims, over which the Court possesses jurisdiction, and a tort independent of a contract, over which the Court does not possess jurisdiction. H.H.O., Inc., 7 Cl. Ct. at 706. For the Court to have jurisdiction over a tortious breach of contract claim, "there must be a direct connection between the Government's contractual obligations and the alleged tortious conduct." Id. (emphasis added); see also C.B.C. Enterprises, Inc. v. United States, 24 Cl. Ct. 1, 5 (1991)(tort claim dismissed where "no nexus alleged between the Government's allegedly tortious breach of these implicit conduct obligations and any express term of the contract"); Jeppesen Sanderson, Inc. v. United States, 19 Cl. Ct. 233, 237 (1990)(the Court must find "a close connection, or nexus," between the contract provisions and alleged tortious conduct). Although Pacific Machinery and the Government were parties to a contract, "[i]t is not jurisdictionally sufficient if the alleged tortious conduct is merely 'related' in some general sense to the contractual relationship between the parties." H.H.O., Inc., 7 Cl. Ct. at 706.

None of these claims directly relate to a specific contractual duty owed by the Government according to the terms of the contract at issue. There is no contractual provision requiring the Government to "properly train operators of the Manlift and to ensure that it was operated at all times by a fully qualified operator." Compl. ¶ 15. Rather, such a clause can only be found upon a standard Pacific Machinery delivery invoice. Def. App. 57-58. Plaintiffs may allege, as Pacific Machinery did in its May 10, 2002 claim to the contracting officer, that the terms of a delivery invoice signed by Nephi Akina, a naval shipyard planner, when Pacific Machinery delivered the manlift to the Navy, became part of Contract No. N00604-00-P-A015. See Def. App. 57 ("LESSEE HEREBY WARRANTS THAT ABOVE EQUIPMENT WILL BE OPERATED AT ALL TIMES BY A FULLY QUALIFIED OPERATOR"). However, a signature upon a delivery invoice by Mr. Akina, who lacks warranted contracting authority, does not contractually bind the Government to the terms stated upon the invoice. Any alleged contract between Pacific Machinery and the Government is not binding upon the Government unless the agreement is entered into by a representative with actual authority to bind the Government. Town of Floyd v. United States, 34 Fed. Cl. 170, 173 (1995). The Navy, therefore, has no direct contractual obligation to Pacific Machinery to warrant that the manlift be operated by a fully qualified operator. Thus, such a claim sounds exclusively in tort.

Similarly, there is no provision whatsoever in Contract No. N00604-00-P-A015 requiring the Government to "follow the manufacturer's instructions and/or recommendations for safe use of the Manlift," or "use, operate, maintain, repair and care for the Manlift in a careful and prudent manner," or "keep and maintain the Manlift in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies." Compl. ¶ 15. Rather, these provisions are

stated upon Pacific Machinery's delivery invoice, not in the terms of Contract No. N00604-00-P-A015. See Def. App. 58 ("Lessee shall use, operate, maintain, repair and care for the Equipment in a careful and prudent manner, and in accordance with the recommendations of the manufacturer of the Equipment, and shall keep and maintain the equipment in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies"). The Navy has no direct contractual obligation to Pacific Machinery to perform these responsibilities.[6] Thus, such claims sound exclusively in tort.

Indeed, Pacific Machinery itself filed a tort claim with the Navy, upon the same facts supporting its complaint in this Court, seeking $290,366.77 for property damage to the manlift caused by the Government's alleged negligence. Pacific Machinery claimed that it was entitled to recovery under the FTCA for physical damage to the manlift because the Government was allegedly "negligent in operating the Grove AMZ131XT manlift by failing to perform proper and/or required procedures prior to or while operating the equipment," as well as failing to properly train manlift operators and warn operators of potential hazards. Def. App. 61. In its tort claim, Pacific Machinery concluded that the manlift was damaged "[a]s a result of the government's negligent conduct." Id.

---

[6] Indeed, Contract No. N00604-00-P-A015 provides that "[t]he Contractor shall comply with all applicable . . . laws, executive orders, rules and regulations applicable to its performance under this contract." Def. App. 19 (emphasis added).

Moreover, the contract's terms provide that it is Pacific Machinery's responsibility to maintain and repair the manlift because "[n]o rent shall accrue with respect to any property . . . during any period when such property is unusable as a result of the failure of the Contractor to render services in connection with operation and maintenance of the equipment as hereinafter required." Def. App. 9 (emphasis added).

Plaintiffs' claims, therefore, do not constitute a tortious breach of contract, but rather, a "tort independent of the contract." H.H.O., Inc., 7 Cl. Ct. at 706. The mere fact that these claims somehow relate to the lease agreement is not sufficient to transform the claims into valid contract claims. Because claims A, C, D, and E of paragraph 15 of the complaint sound in tort, and are not directly connected to the Government's obligations pursuant to the terms of the contract, the Government is entitled to partial summary judgment upon these claims as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant this motion and dismiss AHAC as a party to this complaint. In the alternative, we respectfully request that the Court enter partial summary judgment in the Government's favor.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/ TODD M. HUGHES
TODD M. HUGHES
Assistant Director

S/ KELLY B. BLANK
KELLY B. BLANK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St, N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Of Counsel:

ELIZABETH RIVERA
Counsel
Fleet and Industrial Supply
Center
1942 Gaffney St.
Suite 100
Pearl Harbor, HI 96860
Tele: (808) 473-4144
Fax: (808) 473-2797

November 24, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on November 24, 2004, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ KELLY B. BLANK