08 17/1999 15:49 808-6 RENTAL INC

RENTAL CONTRACT

# PACIFIC MACHINERY, INC.

HONOLULU, OAHU 677-9111 • KAHULUI, MAUI 877-6538 • AGANA, GUAM 646-0118 • HILO, HAWAII 961-3481
LIHUE, KAUAI 245-4067 • HAWAIIAN FLUID POWER 833-4014

PAYMENT
Payable to (Lessor)
Pacific Machinery
94-025 Farrington Hwy
Waipahu, HI 96797-3293

RENTED TO (LESSEE)
COMPTROLLER 630.4
PEARL HARBOR NAVAL SHYD
667 SAFEGUARD ST, #100
PEARL HARBOR HI 96869 5033

PROJECT NAME
PROJECT ADDRESS
DEL TO PEARL HARBOR
REQ N3225399RC70049
JR-SERVICE

| AGREEMENT NO. | DATE | SLM | OP | CL | ITEM | M-HRS | INVOICE NO | DATE |
|---|---|---|---|---|---|---|---|---|
| R0473501 | 08-30-99 | 300700 | | | N00604-99-P-E358 | | 07 | 10 2 |

| CUSTOMER NO | CUST. ORDER NO. | MAKE | MODEL | SERIAL NUMBER | EQ-NO | EQUIPMENT REPLACEMENT VALUE |
|---|---|---|---|---|---|---|
| R04733 | 08-27-99 | | 10 | | | $290,000.00 |

DESCRIPTION OF EQUIPMENT
GV AMZ131XT 46173 TOTAL 335 8 FMS890

** PROFORMA INVOICE **

CUSTOMER CONTACT: JULIE (471-1076)

| | | |
|---|---|---|
| EQUIPMENT RENTAL FROM 08/30/99 THRU 09/29/9 | | |
| GROVE MANLIFT MODEL AMZ131XT | | |
| ID NO: FMS890 SERIAL NO: 46173 | | 9000.00 |
| DELIVERY CHARGE | | 175.00 |

GENERAL TERMS & CONDITIONS

1. Rental rates: a) P* rates are based on an 8 HOUR day, 5 DAY week, 4 WEEK month. b) All other rental rates are based on an 8 HOUR day, 40 HOUR week and 176 HOUR month single shift operations. If 8 hr rate applies it is noted above.
2. Rentals do not include rental purchase option, unless quoted in writing and attached to the rental contract.
3. Lessee is responsible for checking engine oil, water, and fuel daily.
4. Lessee is responsible for proper maintenance of the equipment.
5. Lessee is responsible to return equipment with a full tank of fuel, otherwise tank will be refueled and charged to lessee.
6. Lessee is responsible to return equipment clean, otherwise lessee to be charged for cleaning.
7. Lessee agrees to discontinue use of rental equipment if it becomes unsafe or in a state of disrepair and immediately notify PACIFIC MACHINERY.
8. Lessee is responsible for all damages, including but not limited to the repair and travel.
9. Lessee agrees to notify PACIFIC MACHINERY if machine is moved to another job site.
10. Rental payments are due at the beginning of the rental period. A finance charge at 1% per month made on past due balances.
11. Equipment is rented "As Is" see paragraph 18.
12. LEASE: Lessor leases to Lessee and Lessee rents from Lessor, for the term specified above, plus any extended term agreed in writing, the equipment described above ("the Equipment"). None of the obligations of Lessee shall cease before the Equipment is surrendered to Lessor and the settlement of account accepted in writing by Lessor.

LOSS AND DAMAGE WAIVER (LDW)
LDW IS NOT INSURANCE

| ACCEPTS LDW | DECLINES LDW |
|---|---|
| X | X |

The charge for LDW is 10% of gross rental charges up to a maximum LDW charge of $500.00. By initials, lessee accepts or declines LDW. If lessee accepts LDW in consideration of the charge shown above, Lessor agrees to waive certain claims against lessee for loss of or damage to equipment in accordance with the terms and conditions set forth in Paragraph 23 on the reverse side of this page.

CUSTOMER: READ TERMS AND CONDITIONS ON REVERSE SIDE OF THIS PAGE.

I warrant to be the LESSEE shown above and/or have the authority to sign as agent for LESSEE. I have read and understood the terms and conditions on the face and reverse of this agreement. LESSEE HEREBY WARRANTS THAT ABOVE EQUIPMENT WILL BE OPERATED AT ALL TIMES BY A FULLY QUALIFIED OPERATOR.

LESSEE: PEARL HARBOR NAVAL SHIPYARD

BY: *[signature]*

TITLE: *Planner* DATE: *8/30/99*

DELIVERY ACCEPTED BY: *[signature]*

TIME: *1159* DATE: *8/30/99*

PAY THIS AMOUNT ► 9175.00

LESSOR: PACIFIC MACHINERY

BY: ____________________

TITLE: ____________________ DATE ____________________

ORIGINAL INVOICE

EXHIBIT *2*



Oct 29 04 11:49a p.1

13 RENT. Lessee shall pay Lessor in advance on the date or dates [illegible] d above, the rent stated above, plus general excise tax, at Lessor [illegible] ess shown above, free and clear of all claims, defenses, or set-offs a without deduction of any kind.

14 REGISTRATION, TAXES AND OTHER CHARGES. Lessee sh[illegible] and discharge promptly all taxes, liens and other rates, or charges wh[illegible] y be levied or assessed, or become or threaten to become a charge up the Equipment, and shall keep the Equipment free and clear of all lev[illegible] s attachments and encumbrances.

15 DELIVERY, INSPECTION AND ACCEPTANCE. Lessee shall pay the cost of transporting the Equipment to Lessee's place of use. Lessee acknowledges that prior to signing this Agreement, Lessee has had a reasonab opportunity to inspect the Equipment, that the Equipment conforms to the requirements of this Agreement, and that Lessee accepts the Equipment in its present condition.

16 NO WARRANTIES BY LESSOR. The Equipment is leased "AS IS AND WITH ALL FAULTS" and the parties agree that NO WARRANTY OF MERCHANTABILITY NOR FITNESS FOR A PARTICULAR PURPOSE, AND NO OTHE WARRANTIES, EXPRESS OR IMPLIED, FULL OR LIMITED, HAVE BEEN MADE BY LESSOR. LESSOR SHALL NOT BE LIABLE FOR LOST PROFITS, BUSINESS OR WORKING TIME, INJURY TO ANY PROPERTY OR PERSON, C OTHER DAMAGES, DIRECT OR INDIRECT, SPECIAL, CONSEQUENTIAL OR OTHERWISE, CAUSED BY, RESULTING FROM, OR IN ANY WAY RELATING TO THE EQUIPMENT. Lessor takes no responsibility and makes no representati or warranty, express or implied, that the Equipment is or will be in compliance with any laws, statutes, ordinances, rules or regulations that may now or later be applicable in any way to the Equipment, or to this Leas [illegible]ing but not limited to, those relating to the use, ownership, possession, operation, storage, condition or maintenance of the Equipment. LESSEE ACKNOWLEDGES THAT LESSEE HAS SPECIALIZED KNOWLEDGE AND SKIL [illegible]NING THE EQUIPMENT AND HAS SELECTED THE EQUIPMENT BASED UPON LESSEE'S OWN EXPERTISE.

[illegible]NUFACTURER'S WARRANTIES. LESSEE AGREES THAT THE MANUFACTURER'S WARRANTIES, IF ANY, SHALL BE IN LIEU OF ALL OTHERS, EXPRESS OR IMPLIED. All claims or actions under any manufacturer [illegible]es shall be made by Kessee, at its own exoense, and Kessor shall have mo obligation so make any claim or any such warranty.

[illegible] WARRANTIES BY LESSEE. Lessee represents and warrants as follows:

(a) that the Equipment is leased PRIMARILY FOR BUSINESS, COMMERCIAL OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSE,
(b) that LESSEE IS SOLVENT, in that it is presently paying all of its debts as they become due and has assets whose fair market value exceeds its total debts,
(c) that no mortgage, lease, security interest, lien or other voluntary or involuntary encumbrance of any type which now or later covers or affects any property or interest of Lessee will attach to or affect the Equipmer or this Lease.

19. USE, REPAIR AND MAINTENANCE OF EQUIPMENT. Lessee shall use, operate, maintain, repair and care for the Equipment in a careful and prudent manner, and in accordance with the recommendations of the manufactur of the Equipment, and shall keep and maintain the Equipment in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies that may now or hereafter b applicable in any way to the Equipment or to this Lease.

At the expiration or sooner termination of this Lease, Lessee shall peaceably deliver the Equipment at Lessee's sole cost and expense, to Lessor's place of business in as good condition as originally received, reasonab wear and tear accepted, and in good mechanical and working order.

LESSEE SHALL NOT REMOVE THE EQUIPMENT FROM THE STATE OF HAWAII, OR FROM THE ISLAND OF USE SPECIFIED ABOVE, EXCEPT WITH LESSOR'S PRIOR WRITTEN CONSENT.

20. ALTERATIONS AND ADDITIONS. Lessee shall not make any alterations, additions or improvements to the Equipment without the prior written consent of Lessor. All repairs, replacements, parts, devices, accessories and improvements shall become the property of Lessor.

21. RISK OF LOSS. Lessee shall bear all risks of loss or damage to the Equipment whether or not covered by insurance, from and after the date of this Agreement, or the date Lessee takes possession of the Equipment whichever is earlier. NO LOSS OR DAMAGE TO THE EQUIPMENT SHALL IMPAIR ANY OBLIGATION OF LESSEE UNDER THIS LEASE.

22. INDEMNITY. Lessee shall indemnify, defend and hold Lessor, its agents, representatives and employees, harmless from and against any and all claims, actions, liabilities, losses, demands, fines, penalties, expenses and damages of any kind or nature including legal costs, experts' fees, including those incurred on appeal, relating to, connected with, or arising out of the possession, condition, storage, repair, use or operation of the Equipment and from and against any and all claims, actions, liabilities, lossess and damages arising out of this Lease, except claims caused by the sole negligence or willful misconduct of Lessor. The termination of this Lease or taking of possession or redelivery shall not terminate the liability of Lessee under this provision.

23. INSURANCE. Lessee, at its sole cost and expense, shall provide and maintain (a) property insurance on the Equipment against all risk of loss or damage from every cause whatsoever, naming Lessor as loss payee for not less than its full total original value as stated above, and (b) public liability insurance naming Lessor as an additional insured, including products liability coverage, against bodily injury, including death, and against property damage, covering the Equipment, and its storage, transport, condition, repair, maintenance, use and operation, and (c) no fault coverage to the full extent required under Hawaii law and comprehensive and collision insurance, if the Equipment is a Licensed Vehicle. All such insurance shall be in a form and in amounts and with companies approved in writing by Lessor and shall remain in force during the entire term of the Lease and from the date risk of loss passes to Lessee until the Equipment is returned to Lessor's possession.

LESSEE ACKNOWLEDGES THAT IT IS FREE TO PROCURE ANY INSURANCE POLICIES REQUIRED BY THIS LEASE FROM ANY INSURANCE COMPANY AUTHORIZED TO DO BUSINESS IN THE STATE OF HAWAII.

Lessee shall pay the premiums therefor and deliver to Lessor the policies, or at Lessor's discretion certificates of insurance, or duplicates thereof, within five (5) days after the date of this Lease or the date Lessee obtains possession of the Equipment, whichever is sooner. Such policies shall provide that they may not be altered or canceled without thirty (30) days written notice to Lessor, shall be endorsed so that the policy or policies are primary insurance with regard to any other insurance which Lessor may have in effect covering the Equipment, and any proceeds from said policies shall first be applied to all lossess suffered by Lessor, including loss of rent, replacement, restoration or repair of the Equipment, and any other obligation of Lessee to Lessor under shis Kease'n shd qemaindqq so bd ookied so my koss sulfered by Kessee. If Lessee fails to provide Lessor with said insurance policies or duplicates as and when required above, Lessor may at Lessor's option, in addition to all other remedies available to Lessor by virtue of Lessee's default, have the right to procure such insurance, and any sum so expended by Lessor shall be reimbursed by Lessee to Lessor and shall become additional rent due under this Lease and shall be immediately payable in its entirety.

Lessee irrevocably appoints Lessor as its attorney in fact, with full power in Lessor's sole discretion to negotiate, prosecute, settle or compromise all claims or actions, under or pursuant to such insurance policies, and to execute in the name of Lessee any proofs of claim of loss, and to endorse in the name of Lessee on any settlement, draft or check. Lessee shall cooperate in the investigation, prosecution and defense of all claims or actions, and shall be bound by Lessor's decisions. In the event the Equipment is involved in any accident, damaged, stolen or destroyed, Lessee shall report the same to Lessor in writing within 24 hours.

The Equipment shall not be used by any person, in any manner, or for any purpose that would cause any required insurance to be suspended, canceled or rendered inapplicable.

If Lessee has accepted Loss Damage Waiver (LDW), then Lessee shall not be responsible for direct physical loss of or damage to the Equipment in excess of $1,000, if (a) Lessee reports such loss or damage to Lessor within 24 hours of its occurrence, (b) Lessee provides Lessor with all information requested by Lessor concerning the loss or damage, and (c) Lessor recovers the full amount of the loss or damage from Lessor's All Risk Insurance coverage, within 60 days of the occurrence of such loss or damage. LESSEE SHALL REMAIN FULLY RESPONSIBLE FOR DIRECT PHYSICAL LOSS OR DAMAGE TO THE EQUIPMENT IF (a) the Equipment is damage while water-borne, (b) the Equipment is an automobile, motor truck, trailer, or other vehicle designed primarily for use on the public roads, (c) the loss or damage is caused by wear and tear, hidden defects, dampness, rust, corrosion, temperature, mechanical or electrical breakdown or failure, dishonesty or any criminal act by Lessee or its representatives, improper loading or unloading, misuse, abuse or improper maintenance, unexplained loss, mysterious disappearance, or earthquake, or (d) Lessor is otherwise unable to recover such loss or damage from Lessor's All Risk Insurance coverage within the 60 day period mentioned above. LESSEE'S ACCEPTANCE OF LDW DOES NOT EXCUSE LESSEE'S O[illegible]ONS TO PROVIDE LIABILITY INSURANCE.

[illegible]R'S RIGHTS OF INSPECTION. Lessor shall at any and all reasonable times, with or without notice, have the right to enter into and upon any premises where Lessor reasonably believes the Equipment may be [illegible] the purpose of inspecting and examining the Equipment, and to insure compliance by Lessee with the terms and conditions of this Lease.

2[illegible] [illegible]LING. Lessor may require Lessee to affix and maintain upon the Equipment, labels indicating that the Equipment is owned by Lessor.

26. ATTACHMENT TO REAL PROPERTY. Lessee shall not affix the Equipment or any part of it to any real property without the prior written consent of Lessor. The Equipment shall remain personal property, even if it affixed, or permanently resting upon real property or any building or improvement.

27. NO ASSIGNMENT BY LESSEE. Lessee shall not sell, assign, transfer, pledge, lend, lease, sublease, mortgage, pledge, or otherwise dispose of this Lease, or any of the Equipment, or permit any of the Equipment to be used by anyone other than Lessee or Lessee's employees, without the prior written consent of Lessor and any attempt to do so SHALL BE VOID AND OF NO FORCE OR EFFECT. Neither this Lease nor any of the Equipment, nor any interest in them is assignable or transferable by operation of law.

28. LESSOR'S ASSIGNMENT. Any rights of Lessor in the Equipment, this Lease or all or any part of the monies due or to become due to Lessor under this Lease may be assigned, pledged, mortgaged, transferred, hypothecated or otherwise disposed of, without notice to or consent of Lessee. No assignee of Lessor shall be obligated to perform any duty, covenant or condition required to be performed by Lessor under the terms of this Lease.

29. OWNERSHIP BY LESSOR. The Equipment is, and at all times shall be, the sole and exclusive property of Lessor, and Lessee shall have no right, title or interest in the Equipment, except as expressly stated in this Lease.

30. DEFAULT. Time is of the essence of this Lease. Lessee shall be in default under this Lease if any one or more of the following occur:

(a) Lessee fails to pay when due the rent or any other amount provided in this Lease,
(b) Lessee fails to observe, keep or perform any other of the terms or conditions of this Lease required to be observed, kept or performed by Lessee,
(c) If Lessee shall default under any other lease, agreement or other obligation with Lessor,
(d) If Lessee becomes insolvent or bankrupt, or if any proceeding under the bankruptcy laws, as amended is commenced by or against Lessee, or if a receiver is appointed to take possession of Lessee's property, or if Lessee makes an assignment for the benefit of creditors, or if similar proceedings are instituted by or against Lessee,
(e) If any writ of attachment, execution, garnishment, levy, lien or other similar process is levied against Lessee or any of its property, this Lease or any of the Equipment,
(f) If any certificate, statement, representation, or warranty furnished by Lessee in connection with this Lease proves to be false in any material respect,
(g) If the condition of the affairs of Lessee shall so change as to, in the sole opinion of Lessor, increase the credit risk to Lessor,
(h) If Lessor has reasonable grounds for insecurity regarding the performance by Lessee of any of its obligations under this Lease, and after demand by Lessor for adequate assurance of due performance, Lessee fails to provide assurance of due performance satisfactory to Lessor within a reasonable period of time, not to exceed ten (10) days, or
(i) If any of the above-listed events occur with respect to any guarantor or surety of Lessee.

31. LESSOR'S REMEDIES. In the event of Lessee's default, Lessor shall have the right to exercise, at its option, in addition to any and all other remedies allowed by law, any one or more of the following remedies:

(a) Sue for and recover all rents and other amounts then accrued or thereafter accruing, with respect to the Equipment, or to enforce any other obligation of Lessee or right of Lessor under this Lease.
(b) Require Lessee at its sole cost and expense to promptly return the Equipment to Lessor in the condition specified in paragraph of this Lease.
(c) Take possession of any of the Equipment, and all attachments, with or without demand or notice, wherever it is located, with or without any court order or other legal process, or retain possession of the Equipment in the control of Lessor as a result of its delivery of repair, maintenance or otherwise. In taking possession of the Equipment, Lessor shall have the right to enter upon any premises where Lessor reasonably believes that any of the Equipment is located, and remove it without being liable to anyone for damages, and Lessee waives any and all rights or claims for damages, expenses, costs and attorneys' fees occasioned by such taking of possession. In the event that any of the Equipment is on the property of a third party upon which Lessee has a license or other right to be present, Lessee appoints Lessor as Lessee's agent to go upon the property for the purpose of retaking the Equipment. LESSEE SPECIFICALLY WAIVES ANY RIGHT IT MAY HAVE TO NOTICE OR JUDICIAL HEARING PRIOR TO LESSOR'S TAKING POSSESSION OF ANY ITEM OR ITEMS OF THE EQUIPMENT and specifically acknowledges that its agreement to waive said rights is made in consideration of Lessor's agreement to enter into this Lease. Upon taking possession of any of the Equipment, Lessor may retain the Equipment, or may sell or lease any of the Equipment to any other person or persons upon such terms and conditions as Lessor shall determine.
(d) Terminate this Lease, which termination shall not extinguish Lessee's liability for damages and other amounts resulting from Lessee's default.
(e) Peform any of Lessee's obligations under this Lease for the account of Lessee without waiving the default, and any expense or liability incurred by Lessor in so doing, together with interest at one percent (1%) per month, shall be payable by Lessee upon demand as additional rent for the Equipment.

32. NO JURY TRIAL. In the event of any legal action or proceeding arising out of or in any way relating to the Equipment and/or this Agreement, LESSEE EXPRESSLY WAIVES ANY RIGHTS IT MAY HAVE TO TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING.

33. LIMITATION OF ACTIONS BY LESSEE. Lessee agrees and acknowledges that NO ACTION SHALL BE BROUGHT AGAINST LESSOR UNDER THIS LEASE MORE THAN ONE YEAR AFTER SUCH CAUSE OF ACTION HAS ACCRUED.

34. LESSOR'S EXPENSES. Lessee shall pay to Lessor all of the costs, disbursements, advances, charges and expenses, including reasonible attorneys' fees, in addition to all other sums due under this Lease, incurred by Lessor in connection with any default by Lessee, or in exercising any of Lessor's rights or remedies under this Lease or in enforcing any of its terms, or conditions, whether or not judicial proceedings shall be instituted by Lessor or any other person or entity.

35 NO WAIVER BY LESSOR. No term or condition of this Lease shall be waived, except in writing signed by Lessor. Forbearance, delay or failure on the part of Lessor with regard to a specific default by Lessee shall not be a waiver of any other or subsequent default. The waiver by Lessor of any of the terms or conditions of this Lease shall not constitute a waiver of the breach of any other term or condition or of any other prior, contemporaneous or subsequent breach of such term or condition by Lessee.

36 NATURE OF TRANSACTION. This is a TRUE LEASE and NOT A CONDITIONAL SALE of the Equipment. Without prejudice to the intent of the parties concerning this transaction constituting a true lease, in the event [illegible] [illegible]rmined that this is a conditional sale, Lessor shall retain and Lessee grants Lessor a purchase money security interest in the Equipment together with all attachments, additions, alterations, accessories thereto, [illegible] [illegible]tutions, and all proceeds from the sale or other disposition thereof. The security interest shall secure payment and performance of all of Lessee's obligations under this Lease, and will also secure the full and [illegible] [illegible]nt and performance of any and all other agreements, advances and debts heretofore, now, or hereafter made, due, or existing between Lessor and Lessee, regardless of any other security delivered, held or given, and [illegible] continuing security for any extension or renewals until each and all of them have been fully paid, satisfied and discharged.

37 NOTICES. All notices relating to this Lease shall be made in writing and mailed to the other party at its address as set forth above. Any such notice shall be effective when mailed, duly addressed with postage prepaid.

38 ENTIRE AGREEMENT. This agreement constitutes the entire agreement between the parties, and may not in whole or part be [illegible], abandoned, altered, waived, discharged, terminated or changed except by a written agreement signed by the parties. No oral agreement, guaranty, promise, conversation, condition, representation or warranty and no oral modification of the terms of this Lease shall be binding.

ORIGINAL

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROROVED OMB NO. 1105-0008 EXPIRES 8-31-02

1. Submit To Appropriate Federal Agency:
Commanding Officer
Naval Legal Service Office Southwest
3085 Dolphin Alley
San Diego, California 92136-5197
Attn: FTCA Claims

2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)*
Pacific Macinery, Inc.
c/o Keith K. Hiraoka
Christine Tamashiro
Roeca Louie & Hiraoka
841 Bishop St., #900, Honolulu, HI 9681[illegible]

| 3. TYPE OF EMPLOYMENT (MILITARY / CIVILIAN) | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. OR P.M.)* |
|---|---|---|---|---|
| | N/A | N/A | May 20, 2000 | Approx. 12:30 p.m. |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

See attached statement.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED *(See instructions on reverse side)*

See attached statement.

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

N/A

11. WITNESSES

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| | |

12. *(See instructions on reverse)* AMOUNT OF CLAIM *(in dollars)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| $290,366.77 | N/A | N/A | $290,366.77 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Sharon L Cimmand VP CFO | (808) 676-0288 | 10 May 02 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 18 U.S.C.A. 287.)* |

95-108
Previous editions not usable

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

RECEIVED
MAY 17 2002
NAVAL LEGAL SERVICE OFFICE SOUTHWEST

ORIGINAL

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: *5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.*

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

Complete all items – Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. *If more than one agency is involved, please state each agency.*

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim And may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden, to Director, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC 20530 and to the Office of Management and Budget, Paperwork Reduction Project (1105-0008), Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? Yes, if yes give name and address of insurance company (*Number, street, city, State, and Zip Code*) and policy number. No

Yes

AIG Worldsource
Property Department
80 Pine Street, 8th Fl.
New York, NY 10005

Property Insurance Policy No. 641 4323
Policy Term July 1, 1999 to July 1, 2000

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

Yes, deductible

17. If deductible, state amount

$50,000.00

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (*It is necessary that you ascertain these facts*)

Although a claim has been filed with the carrier, settlement of the claim has not been finalized. The insurer has proposed to declare the equipment a constructive total loss and has appraised the property at $197,477.77, actual cash value. See Exhibit 9.

19. Do you carry public liability and property damage insurance? Yes, If yes, give name and address of insurance carrier (*Number, street, city, State, and Zip Code*) No

See 15 above re property damage insurance.

General liability insurance carried through:
AIG Worldsource
80 Pine Street
New York, NY 10005

SF 95 (Rev. 7-85) BACK

* U.S. GOVERNMENT PRINTING OFFICE: 1989—241-175

Atttachment to Standard Form 95
(Claim for Property Damage and Other Losses)

CLAIMANT: Pacific Machinery, Inc.
DATE OF CLAIM: May 10, 2002
DATE OF INCIDENT: May 20, 2000

CLAIM ASSERTED:

Claimant PACIFIC MACHINERY, INC., by and through its attorneys, Roeca, Louie & Hiraoka, hereby submits this claim to recover the following due to the government's negligence:

1. amounts for the physical damage to Pacific Machinery's property;
2. loss of monthly rental payments resulting from the damage to Pacific Machinery's property; and
3. loss of use due to physical damage to Pacific Machinery's property.

STATEMENTS ABOUT NATURE AND EXTENT OF PROPERTY DAMAGE

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof).*

Pacific Machinery had leased a Grove AMZ131XT, Serial No. 46173, to the Department of the Navy, Pearl Harbor Naval Shipyard ("PHNSY"). **Exhibit 1**, Contract Documents. The manlift was leased to the Navy for the period covering August 30, 1999 to September 30, 2000 as the agreements so indicate. **Exhibit 2** is a picture of a model Grove AMZ131XT, Self-Propelled Aerial Work Platform, also known as a manlift, which is similar to the one that is the subject of this claim. On May 20, 2000, a PHNSY employee, Leroy Fujii, was killed while operating the manlift. Mr. Fujii was in the operator's platform with the riser and boom extended when the manlift tipped over. Mr. Fujii was killed in the accident. The Grove manlift was badly damaged in the accident. Pacific Machinery's basis for its claim is that the government and its employees were negligent in operating the Grove AMZ131XT manlift by failing to perform proper and/or required procedures prior to or while operating the equipment. PHNSY also failed to properly train operators of the manlift and failed to warn them of the hazards involved in operating the manlift. As a result of the government's negligent conduct, the equipment was severely damaged subjecting Pacific Machinery to substantial financial losses.

Negligence
(1) failure to perform proper procedure
(2) failure to properly tr[...]
(3) failure to warn of hazar[...]

The U.S. Department of Labor, Occupational Safety and Health Administration ("DOL"), conducted an investigation and inspection of the area and the equipment from May 22, 2000 to May 31, 2000. The DOL's findings and conclusions from its investigation confirm that PHNSY

DEPARTMENT OF THE NAVY
NAVAL LEGAL SERVICE OFFICE SOUTHWEST
BUILDING 265, NAVAL STATION
3085 DOLPHIN ALLEY
SAN DIEGO, CALIFORNIA 92136-5187

5890
Ser 351/1870
June 25, 2002

CERTIFIED MAIL

Roeca, Louie & Hiraoka
Attn: Keith K. Hiraoka, Esq.
841 Bishop Street, Suite 900
Honolulu, HI 96813

Dear Mr. Hiraoka:

SUBJECT: PACIFIC MACHINERY, CLAIM NUMBER 20575

This is in reference to the administrative claim submitted by you on behalf of Pacific Machinery in the amount of $290,366.77 for property damage alleged to have resulted from an incident which occurred at Pearl Harbor Naval Shipyard, Pearl Harbor, Hawaii, on or about May 20, 2000.

Examination of the facts indicates that the United States of America is not liable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2672, and 2674-2680for this incident. Federal employees did not cause the damage or injury through negligence in the course and scope of federal employment.

Accordingly, this claim is denied. If you choose to file suit, it must be filed in the appropriate United States District Court within six months of the date this letter was mailed. Failure to file suit within the six-month period will result in the claim being forever barred.

Sincerely,

ROGER B. ATKINS
Claims Officer



EXHIBIT 4

DEPARTMENT OF THE NAVY
FLEET AND INDUSTRIAL SUPPLY CENTER
1942 GAFFNEY STREET, SUITE 100
PEARL HARBOR, HAWAII 96860-4549

IN REPLY REFER TO:
4200
Code 201/Ser 0129
September 10, 2002

VIA FACSIMILE AND U.S. MAIL

Pacific Machinery, Inc.
ATTN: Sharon Amano, Vice President Chief Financial Officer
94-025 Farrington Highway
Waipahu HI 96797-2201

Fax: (808) 676-0239

**Contracting Officer's Final Decision**
**Pacific Machinery, Certified Claim N00604-00-P-A015**

Dear Ms. Amano,

BACKGROUND:

On May 21, 2002, the Government received Pacific Machinery's certified claim under contract N00604-00-P-A015. Your claim is hereby denied in its entirety. This constitutes the Contracting Officer's Final Decision in accordance with Federal Acquisition Regulation (FAR) 33.211.

2. CLAIMS ASSERTED BY PACIFIC MACHINERY:

Breach of contract for failure to procure property insurance covering the rental property;
Breach of contract for failure to return the leased equipment to Lessor in the condition received;
Breach of contract for failure to comply with the requirement that the leased equipment be operated by a fully qualified operator;
Contractual indemnity for liability in pending lawsuits initiated as a result of Leroy Fujii's death in an incident on May 20, 2000 at the Pearl Harbor Naval Shipyard (PHNSY);
Legal fees and costs incurred in defending pending lawsuits initiated as a result of Leroy Fujii's death, pursuant to the "hold harmless" clause in the indemnity provision in the contract;
Rental income pursuant to the agreements with the Navy for the remainder of the contract term, from May 21, 2000 through September 30, 2000; and
Payment of interest on all claims pursuant to FAR 52.233-1(h).

4200
Code 201/Ser 0129
September 10, 2002

FACTUAL DISPUTES:

We dispute your assertion the delivery receipt signed by Nephi Akina on 30 Aug 99 was a valid, binding contract between Pacific Machinery and the Government. You conclude on the date of the incident, 20 May 00, the delivery receipt, dated 30 Aug 99 to 29 Sep 99, was the contract in effect despite the fact this manlift, Serial #46173, had been leased to the Government under Contract N00604-00-P-A015, Modification P0003 on 1 Jan 00. See Encl (1). On 20 May 00, the manlift was leased under Contract N00604-00-P-A015, not under the delivery receipt dated 30 Aug 99 through 29 Sep 99. Pacific Machinery acknowledged this at the time the contract was executed, and throughout the term of the lease. See Encl (2).

You also argue, in the alternative, that the delivery receipt serves as a valid modification to an existing Government contract. However, the delivery receipt is dated 30 Aug 99, the contract to which you refer in your argument is dated 1 Oct 99, and the modification cannot precede a contract which doesn't exist.

Based on our records, the following tracks PHNSY's rental of the Grove AMZ131XT, Serial #46173:

| | |
|---|---|
| N00604-98-M-C354 | 17 Jul 98 to 30 Sep 98 |
| N00604-99-M-1079 | 1 Oct 98 to 28 Feb 99 |
| N00604-99-P-E358 | 30 Aug 99 to 29 Oct 99 |
| N00604-00-P-A263 | 1 Nov 99 to 31 Dec 99 |
| N00604-00-P-A015 | 1 Jan 00 to 30 Sep 00 (Mod P00003) |

The delivery receipt is not a valid Government contract, Nephi Akina is not a Contracting Officer, and does not have proper authority to bind the Government. The government is bound only by government agents acting within the actual scope of their authority to contract. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947); Hawkins & Powers Aviation, Inc. v. United States, 46 Fed. Cl. 238 (2000). Furthermore, the government is not bound by the actions of one who has apparent authority to act for the government. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947); Sam Gray Enterprises, Inc. v. United States, 43 Fed. Cl. 596 (1999).

Finally, your company has been contracting with PHNSY since 21 Jul 98 on at least six different manlift/crane contracts, holds contracts with other Government entities in Hawaii, and now questions the contractual legality of the
SF 1449. Note the above-referenced contracts for manlifts were all executed on SF 1449s. It is a well-established practice for Government contracts to be

4200
Code 201/Ser 0129
September 10, 2002

drawn on SF 1449s, not contractor-provided delivery receipts. Clearly, the SF 1449 endorsed by June Nakagawa on 7 Oct 99 and modified by P00003 is a valid, binding contract. See Encl (3). The terms and conditions of the referenced delivery receipt are entirely unenforceable.

4. RESPONSE TO CLAIMS ASSERTED:

a) Breach of contract for failure to procure property insurance covering the rental property.

Denied. This claim relies upon language contained in the delivery receipt. This statement is not in Contract N00604-00-P-A015, and therefore, is unenforceable. The United States Government is a self-insured entity. There was no requirement for the Government to procure property insurance. Additionally, we have reason to believe that Pacific Machinery has been reimbursed by its insurer, AIG Hawaii, and therefore, Pacific Machinery should not recover twice. For these reasons, the claim lacks merit and the Government is not liable to Pacific Machinery for the appraised cost of $191,477.77.

b) Breach of contract for failure to return the leased equipment to Lessor in the condition received.

Denied. The manlift was damaged due to improper maintenance and testing performed by Pacific Machinery. The Government was under no obligation to service the manlift, nor did the Government attempt to service the manlift. In fact, the Government made regular calls to Pacific Machinery for problems involving the risers, interlock system, and limit switches, and Pacific Machinery promptly provided maintenance and service. The damaged condition of the manlift is directly attributable to Pacific Machinery's improper maintenance and testing, and is not due to any negligence on the part of the Government.

On 4 Jan 00, Pacific Machinery serviced manlift 46173 by "remov[ing] pin lock switch and disconnect[ing] wiring inside switch. Installed new switch and hooked up wires." On 24 Feb 00, Pacific Machinery responded to another service call on manlift 46173, and "removed and replaced lower limit switch for riser telescope, adjusted and tested."

As part of a mandated incident investigation, the Navy hired Dynamark Engineering, a private, independent consultant, to analyze the operability of five motion limit switches. In its report dated 11 Aug 00, Dynamark concluded the riser limit

switches were adjusted to incorrect boom limit values, and were not at the proper settings as recommended by the Grove manual. See Encl (4). Arguably, the incident was a direct result of Pacific Machinery setting the wrong angular values on the limit switches.

Futhermore, Grove Safety Bulletin dtd 10 Apr 00 stressed the importance of regular inspections and function testing of the riser interlock system. The maintenance records submitted by Pacific Machinery show that these tests were never conducted. If Pacific Machinery had not been negligent in this regard, it is highly unlikely this incident and the resulting damage would have occurred.

Finally, Pacific Machinery has been reimbursed by its insurer. For these reasons, your claim lacks merit, and the Government denies the $191,477.77 cost of the manlift in full.

**c) Breach of contract for failure to comply with the requirement that the leased equipment be operated by a fully qualified operator.**

Denied. This claim relies upon language contained in the delivery receipt. This statement is not in Contract N00604-00-P-A015, and therefore, is unenforceable. Furthermore, all manlift operators at PHNSY are fully qualified and properly licensed in accordance with Navy regulations. Mr. Fujii was a fully qualified operator. As your claim is without merit, the cost of the manlift is denied.

**d) Contractual indemnity for liability in pending lawsuits initiated as a result of Leroy Fujii's death in an incident on May 20, 2000 at the Pearl Harbor Naval Shipyard (PHNSY).**

Denied. This claim relies upon language contained in the delivery receipt. This statement is not in Contract N00604-00-P-A015, and therefore, is unenforceable. The Government denies any contractual obligation to indemnify Pacific Machinery.

**e) Legal fees and costs incurred in defending pending lawsuits initiated as a result of Leroy Fujii's death, pursuant to the "hold harmless" clause in the indeminity provision in the contract.**

Denied. This claim relies upon language contained in the delivery receipt. This clause is not in Contract N00604-00-P-A015, and therefore, is unenforceable. The Government denies any contractual obligation to indemnify Pacific Machinery.

**f) Rental income pursuant to the agreements with the Navy for the remainder of the contract term, from May 21, 2000 through September 30, 2000.**

Denied. Modification P00004 to Contract N00604-00-P-A015 executed a bilateral termination for convenience as of 20 May 00. See Encl (5). The agreement was signed by Susan Amano and Wanda Okemura, Contracting Officer. The Navy paid Pacific Machinery for rental through 20 May 00. Pacific Machinery voluntarily agreed to terminate the contract, and thus, the Government denies $36,000 lease rent on the terminated portion of the contract.

**g) Payment of interest on all claims pursuant to FAR 52.233-1(h).**

Denied. The Government denies all claims, and therefore, Pacific Machinery is not entitled to interest.

5. FINAL DECISION:

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly win the United States Court of Federal Claims (except as provided in the contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Sincerely,

JAMES B. POWERS
Contracting Officer

# INLAND MARINE BASIC POLICY

**No. IMB 641 4323**

641 2124
RENEWAL OF NUMBER

2 COVERAGE IS PROVIDED IN THE COMPANY DESIGNATED BY NUMBER A STOCK INSURANCE COMPANY (HEREIN CALLED THE COMPANY)

1 NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
2 AMERICAN HOME ASSURANCE COMPANY
3 THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

**MEMBER COMPANIES**
**AMERICAN INTERNATIONAL GROUP, INC.**
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, NY 10270

Insured's Name and Mailing Address

Theo H. Davies & Co. Ltd.
810 Kapiolani Blvd.
Honolulu, Hawaii 96813

POLICY PERIOD: FROM 07/01/99 TO 07/01/00 AT 12:01 A.M. STANDARD TIME

AT PLACE OF ISSUANCE YEARS 1

| TOTAL PREMIUM | | | | PREMIUM PAYABLE |
|---|---|---|---|---|
| AMOUNT | RATE | PREMIUM (PAID IN FULL AT INCEPTION) | TOTAL PREMIUM ANNUAL | AT INCEPTION |
| $ 150,978,647 | $ .14363 | $ 815,216,863 | $ | $ |

In consideration of the stipulations herein named and of the premium above specified the Company does insure the Insured named above, hereinafter called the Insured, whose address is shown above from the inception date shown above, at 12:01 A.M. (Standard Time), to the expiration date shown above, at 12:01 A.M. (Standard Time), at place of issuance to an amount not exceeding the amount(s) above specified or as described in form and/or endorsements attached hereto.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

Countersigned by ____________________
Authorized Representative

64398 (1/94)

## CONDITIONS

1. **Misrepresentation and Fraud.** This entire policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

2. **Notice of Loss.** The Insured shall as soon as practicable report in writing to the Company or its agent every loss, damage or occurrence which may give rise to a claim under this policy and shall also file with the Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss.

3. **Examination Under Oath.** The Insured, as often as may be reasonably required, shall exhibit to any person designated by the Company all that remains of any property herein described, and shall submit, and in so far as is within his or their power, cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Company and subscribe the same; and, as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representative and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Company or any of its employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Company might otherwise have with respect to any loss or claim, but such examinations and acts shall be deemed to have been made or done without prejudice to the Company's liability.

4. **Valuation.** The Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

5. **Settlement of Loss:** All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company. No loss shall be paid or made good if the Insured has collected the same from others.

6. **No Benefit to Bailee.** This insurance shall in no way inure directly or indirectly to the benefit of any carrier or other bailee.

7. **Subrogation or Loan.** If, in the event of loss or damage, the Insured shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, the Insured will, if requested by the Company, assign and transfer such claim or right of action to the Company or, at the Company's option, execute and deliver to the Company the customary form of loan receipt upon receiving an advance of funds in respect of the loss or damage, and will subrogate the Company to, or will hold in trust for the Company all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of the Company.

8. **Reinstatement.** (a) Scheduled Property - The amount of insurance and the applicable limit of liability, upon the occurrence of any loss covered hereunder, it reduced by the amount of such loss. (b) Unscheduled Property - Each claim paid hereunder reduces the amount of insurance by the sum paid, but the amount of such loss shall be reinstated automatically and a pro rata additional premium shall be payable from the date of the occurrence when the amount of such loss is determined.

9. **Pair or Set.** In the event of loss of or damage to any article or articles which are a part of a pair or set, the measure of loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set.

10. **Parts.** In the event of loss of or damage to any part of insured property consisting when complete for use, of several parts the Company shall only be liable for the value of the part loss or damaged.

11. **Machinery.** In the event of loss of or damage to machinery consisting, when complete for sale or use, of several parts, the Company shall only be liable for the value of the part(s) lost or damaged, including the cost of installation.

12. **Labels.** In the event of loss of or damage to labels, capsules or wrappers, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules or wrappers.

13. **Impairment of Recovery Rights.** Any act or agreement by the Insured before or after loss or damage whereby any right of the Insured to recover in whole or in part for loss or damage to property insured hereunder against any carrier, bailee or other party liable therefor, is released, impaired or lost, shall render this policy null and void, but the Company's right to retain or recover the premium shall not be affected. The Company is not liable for any loss or damage which, without its written consent, has been settled or compromised by the Insured. It shall, however, be permissible for the Insured, without prejudice to this insurance, to accept the ordinary bills of lading or shipping receipts issued by carriers limiting their liability to less than the actual value.

14. **Protection of Property.** In cases of loss, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance, nor shall the acts of the Insured or the Company, in recovering, saving and preserving the property insured in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the Company proportionately to the extent of their respective interests.

15. **Company's Options.** It shall be optional with the Company to take all, or any part, of the property at the agreed of appraised value, or to repair, rebuild or replace

the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within sixty (60) days after the receipt of the proof of loss herein required.

16. **Abandonment.** There can be no abandonment to the Company of any property.

17. **Suit.** No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twenty-four (24) months next after discovery by the Insured of the occurrence which gives rise to the claim; provided, however, that if by the laws of the state within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state.

18. **Appraisal.** If the Insured and the Company fail to agree as to the amount of loss, each shall on the written demand of either, made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree, shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

19. **Assignment of Policy.** The policy shall be void if assigned or transferred without the written consent of the Company.

20. **Cancellation.** This policy may be cancelled by the Insured by surrender thereof to the Company of any of its authorized agents or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the address shown in this policy or last known address written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

    If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed *pro rata*. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

21. **Conformity to Statute.** Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

22. **Changes.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

23. **Other Insurance.** If, at the time of loss or damage, there is available to a named or unnamed insured or any other interested part any other insurance which would apply in the absence of this policy, the insurance under this policy shall apply only as excess insurance over such other insurance.

24. **Examination of Records.** The Insured shall, as often as may be reasonably required during the term of this policy and for one year thereafter, produce for examination by the Company or its duly authorized representative all the books and records, inventories and accounts relating to the property covered hereunder.

## EXCLUSIONS

**PERILS EXCLUDED:** This policy does not insure against loss, damage or expense caused directly or indirectly by:

A. (1) Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual impending or expected attack, (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or forces;

(2) Any weapon of war employing atomic fission or radioactive force whether in time of peace or war, or

(3) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

B. Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; however, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

**In Witness Thereof**, this policy has been executed by the Present and Secretary of the Company, but this policy shall not be valid unless countersigned by a duly authorized agent of the Company.

Susan Rivera

President
American Home Assurance Company

President
National Union Fire Insurance
Company of Pittsburgh, PA

Elizabeth M. Tuck

Secretary
National Union Fire Insurance Company of Pittsburgh, Pa.
American Home Assurance Company
The Insurance Company of the State of Pennsylvania

Policy No: 641-4323
Renewing: 641-2124

1. **Name and Address of the Insured:**

Theo. H. Davis & Co., Ltd.

Pacific Machinery, Inc. Divisions: TheoDavis Truck Center, TheoDavis Energy Systems, Pacific Machinery Rental 1, Pacific Machinery Idealease Hawaii, Hawaiian Fluid Power; Kawaihae Terminals, Inc.; Hawaii Pizza Hut, Inc.; Taco Aloha, Inc.; Jardine Hawaii Motor Holdings Limited;
TheoDavies Euromotors, Ltd. dba Big Island Honda, dba Big Island Mitsubishi, dba Continental Cars, dba Jaguar of Honolulu, dba TheoDavies Porsche, dba TheoDavies Audi, dba TheoDavies Land Rover; Jardine Hawaii Imports, Inc. dba Theodavies Volvo Hawaii;
TheoDavies Foundation;
and/or all corporations, partnerships, joint ventures, organizations, and other interests, including automatically the interests of any parent, trust, owner, entities, divisions as have existed or as now or may hereafter exit, be acquired, merged or constituted, or in which the specifically named insured entity, or combination of entities, has 50% or more ownership interest, or has effective or managerial control, or for which it is required to or has agreed prior to loss, to maintain insurance, including any affiliated, associated, allied and subsidiary entities.

**Hereinafter referred to as the "Insured"**

810 Kapiolani Boulevard, Honolulu, Hawaii 96813-5210

2. **Loss Payable**

Loss, if any, shall be adjusted with and made payable to Theo. H. Davies & Co., Ltd. or their order, whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

3. **Loss Payee**

Shall apply on a blanket basis to any and all interests in property insured hereunder.

4. **Term of Insurance:** ✓

In consideration of an annual premium, this policy attaches and covers for a period of 12 months, from 1 July 1999 to 1 July 2000, beginning and ending at 12:01 A.M., standard time, at the location of the property involved.

5. **Annual Premium:** ✓

A. The premium for this policy is the amount shown below at inception based on the rates shown below applied against the Total Annual Values as of December 31, 1998 as per the Schedule of Values attached to this policy.

B. This policy is not subject to midterm adjustment nor annual adjustment.

E. **Permits Clause**

Permission is granted for change in use or occupancy without notice, for increased hazards whether or not by means within the control or knowledge of the Insured, and for property insured hereunder to be vacant and/or unoccupied, all without limit of time. Permission is also granted to alter and construct additions to any building or to build new buildings and to use and occupy building(s) in course of construction.

F. **Brands and Labels**

In case of loss or damage to property bearing a brand or trademark, or the name of the Insured, or the date of which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal of all such brands or trademarks or other identifying characteristics. The cost of such removal shall be included as part of the claim.

G. **Salvage and Recovery**

After expenses incurred in salvage or recovery are deducted, any salvage or other recovery, except recovery through subrogation proceedings in which any recoveries are shared by the Insured and the Company in relationship to their total loss, shall accrue entirely to the benefit of the Company until the sum paid by the Company has been recovered, except for any amount assumed by the Insured (other than the deductible) over and above any payment under this policy. The Insured shall have control, direction and approval on the sale of salvage.

H. **Subrogation Waiver**

This insurance shall not be invalidated should the Insured waive any or all right of recovery against any party for loss, provided, however, that in the event the Insured waives only a part of his rights against any particular third party, the Company shall be subrogated with respect to all rights of recovery which the Insured may retain against any such third party for loss from the perils insured against to the extent that payment therefore is made by the Company; all subject to the following additional provisions:

1. if made before loss has occurred, such agreement to waive subrogation rights may run in favor of any third party.

2. if made after loss has occurred, such agreement may run only in favor of a third party falling within one of the following categories at the time of loss;

    (a) A third party insured under this Policy; or,

    (b) A corporation, firm or entity (1) owned or controlled by the Insured or in which the Insured owns capital stock or other proprietary interest, or (2) owning or controlling the Insured or owning or controlling capital stock or other proprietary interest in the Insured; or

    (c) A tenant of the Insured; or,

    (d) Directors, officers, or employees of the Insured.

CERTIFICATE OF FILING

I hereby certify that on November 24, 2004, a copy of the foregoing "DEFENDANT'S APPENDIX IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ KELLY B. BLANK