**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY<br>as Subrogee of Pacific Machinery, Inc.<br>and<br><br>PACIFIC MACHINERY, INC.<br>Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA<br>(Department of Navy, Fleet and Industrial Supply Center)<br>and<br><br>(Pearl Harbor Naval Shipyard)<br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION NO. 03-1906C**<br><br>**(JUDGE BLOCK)** |

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

---

BY:/s/nicholas g karambelas_
NICHOLAS G. KARAMBELAS
Sfikas & Karambelas, LLP
1201 Pennsylvania Avenue, N.W.
Suite 300
Washington, DC 20004
Tel. (202) 661-4614

Attorney of Record for Plaintiffs

Date: January 19, 2005

OF COUNSEL:

BY: Brian E. Tetro
BRIAN E. TETRO
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103

# TABLE OF CONTENTS

**PAGE(S)**


STATEMENT OF THE ISSUES…………………………………………….8

STATEMENT OF THE CASE……………………………………………8

I. Nature Of The Case………………………………………………..8

II. Statement Of The Facts…………………………………………....8

ARGUMENT……………………………………………………….....…11

I. Standard Of Review……………………………………………..…11

A. RCFC 12(b)(1) Motion To Dismiss………………………11

B. RCFC 56 Summary Judgment…………………………….11

II. This Court Must Entertain AHAC's Subrogation Claim Because There Is No General Rule Prohibiting A Government Contractor From Suing The United States For The Use And Benefit Of The Insurer Which Has Absorbed The Loss…………………………………………………………..…12

III. The "Tort" Allegations In Plaintiffs' Breach Of Contract Action Against Defendant Must Not Be Stricken Because They Are Directly Connected To Defendant's Contractual Obligations……………………………………………………..22

CONCLUSION…………………………………………………………..24

# TABLE OF AUTHORITIES

## FEDERAL CASES

**PAGE(S)**

American Pac. Roofing Co. v. United States
21 Cl. Ct. 265 (1990)……………………………………….11

Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1996)………………………………………..11

Chicago, St. Louis & New Orleans R.R. v. Pulman Southern Car Co.
139 U.S. 79 (1891)………………………………………….15

Container Co., et al., v. United States
116 Ct. Cl. 706 (1950)……………………………………...14, 15, 19

Federal Ins. Co. v. United States
29 Fed. Cl. 302 (1993)……………………………………..21

Fireman's Fund Ins. Co. v. England
313 F. 3d. 1344 (Fed. Cir. 2002)…………………………...20

George W. Kane, Inc. v. United States
26 Cl. Ct. 655 ……………………………………………….11

Kinne v. United States
21 Cl. Ct. 104 (1990)………………………………………...11

Merritt v. United States
267 U.S. 338 (1925)………………………………………….15

Nashville Industrial Corp. v. United States
69 Ct. Cl. 443 (1930)……………………………………….16, 19, 20

North Slope Technical, Ltd. v. United States
27 Fed. Cl. 425 (1992)……………………………………..13, 18, 19

The Potomac
105 U.S. 630 (1881)……………………………………….16, 20

Thomas Creek Lumber & Log Co. v. United States
36 Fed. Cl. 220 (1996)……………………………………..11

United States v. American Tobacco Co.
166 U.S. 468 (1897)………………………………………..17, 19

**FEDERAL STATUTES**

31 U.S.C. Section 3727(a)(1)(b)……………………………………12,

41 U.S.C. Section 15(a)…………………………………………….12,

41 U.S.C. Section 601………………………………………………8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN HOME ASSURANCE COMPANY
as Subrogee of Pacific Machinery, Inc.
and

PACIFIC MACHINERY, INC.
Plaintiffs

v.

UNITED STATES OF AMERICA
(Department of Navy, Fleet and Industrial Supply Center)
and

(Pearl Harbor Naval Shipyard)
Defendant

**CIVIL ACTION NO. 03-1906C**

**(JUDGE BLOCK)**

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss the subrogation claim of Plaintiff, American Home Assurance Company ("AHAC") because its insured, Plaintiff, Pacific Machinery, can pursue these rights for the use and benefit of its insurer.

Furthermore, Plaintiffs respectfully request that this Court deny Defendant's Motion for Partial Summary Judgment with regard to certain allegations in Plaintiffs' Complaint because there is definitely a genuine issue of material fact as to whether these aforenoted allegations in the Complaint are directly connected to the parties' contractual obligations. In support of this Motion, Plaintiffs rely upon the Complaint, Plaintiffs' Proposed Findings of Uncontroverted Fact, and the following Brief and Appendix. [1]

[1] (Compl. Pg. ____) refers to a paragraph in Plaintiffs' Complaint filed on August 11, 2003. (Def. App. ____) refers to a page within Defendant's Appendix. (Since all documents cited by Plaintiffs in this Brief are already included in Defendant's Appendix, all references to these documents will be based on the documents collected and numbered in Defendant's Appendix).

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CIVIL ACTION NO. 03-1906C**

**(JUDGE BLOCK)**

AMERICAN HOME ASSURANCE COMPANY :
as Subrogee of Pacific Machinery, Inc. :
900 Dominion Towner :
625 Liberty Avenue :
Pittsburgh, PA 15222 :

and

PACIFIC MACHINERY, INC. :
94-025 Farrington Highway :
Waipahu, Hawaii 96797-2201 :

Plaintiffs

v.

UNITED STATES OF AMERICA
(Department of Navy, Fleet and Industrial Supply Center)
1942 Gaffney Street
Suite 100
Pearl Harbor, Hawaii 96880-4549

and

(Pearl Harbor Naval Shipyard)
667 Avenue E, Suite 100
Pearl Harbor, Hawaii 96860-5033

Defendant

**PLAINTIFFS' BRIEF**

**STATEMENT OF THE ISSUES**

1. Whether Plaintiff, Pacific Machinery, as a matter of law, can sue Defendant, The United States of America, for the use and benefit of Pacific Machinery's insurance company, Plaintiff, American Home Assurance Company?

2. Whether Plaintiffs can pursue a breach of contract action against Defendant that is based in part upon allegations which are tortious in nature but directly connected to Defendant's contractual obligations?

**STATEMENT OF THE CASE**

**I. NATURE OF THE CASE**

Plaintiffs, Pacific Machinery, Inc. and their insurer, American Home Assurance Company (hereinafter "AHAC"), filed this lawsuit pursuant to the Contract Disputes Act of 1978, 41 U.S.C. Section 601 et seq. (hereinafter "CDA"). American Home Assurance Company requests $141,457.77, the amount for which AHAC indemnified Pacific Machinery for property damage, $36,000.00 for loss of rental payments, and $3,680.07 for storage and moving fees. Compl. Pg. 22. Pacific Machinery requests $50,000.00, the amount of its deductible pursuant to its insurance policy with AHAC. Compl. Pg. 23.

**II. STATEMENT OF THE FACTS**

On September 29, 1999, Defendant and Pacific Machinery entered into a contract, Solicitation No. 00604-99-T-A217, in which Defendant leased a Grove Model No. AMZ 131 XT, Serial No. 46173, Self-Propelled Ariel Work Platform ("the Manlift") from Pacific Machinery.

Def. App. 1-36. The aforenoted contract ran from October 1, 1999 to September 30, 2000. With regard to the aforenoted contract, Defendant agreed to the following:

**RESPONSIBILITY FOR RENTED PROPERTY**

> Except for reasonable wear and tear, the Government agrees to return the rented property in as good condition as when received, provided, however, if the rented property is operated by an employee of the contractor, the Government shall not be liable for damage to the rented property incident to such operation.

Prior to that time, on August 30, 1999, Defendant entered into a rental contract with Pacific Machinery for the leasing of the Manlift in question. Def. App. 57. As an acknowledgment of this contract and its terms and conditions, Nephi Akina, a shipyard planner, signed on behalf of Defendant, specifically the Pearl Harbor Naval Shipyard. In doing so, Akina represented that he has "the authority to sign as agent for [Pearl Harbor Naval Shipyard]". Id. Further, Akina's signature signified that he had "read and understood the terms and conditions on the face and reverse of this agreement." Id. These terms and conditions, stated in relevant part, were as follows:

1. Defendant's failure to properly train operators of the Manlift and to ensure that it was operated at all times by a fully qualified operator;

2. Defendant's failure to follow the manufacturer's instructions and/or recommendations for safe use of the Manlift;

3. Defendant's failure to use, operate, maintain, repair and care for the Manlift in a careful and prudent manner;

4. Defendant's failure to keep and maintain the Manlift in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies that were applicable on or about May 20, 2000;

Id.

On or about May 20, 2000, Defendant's employees, including Leroy Fujii, a naval employee, acting within the course and scope of their employment with Pearl Harbor Naval Shipyard, operated the Manlift. As Defendant's employees operated the Manlift, an accident occurred resulting in the death of Leroy Fujii and damage to the Manlift.

Effective July 1, 1999, AHAC issued an insurance policy, number 6414323, for a term of one year whereby AHAC agreed to insure Pacific Machinery against losses resulting from property damage to the Manlift. Def. App. 68-73. The insurance agreement entered into between Pacific Machinery and AHAC included a subrogation clause which states in relevant part that:

> [i]f in the event of loss or damage, the Insured [Pacific Machinery] shall require any right of action against any individual, firm or corporation, for loss of, or damage to, property covered hereunder, the Insured will, if

> requested by the company, [AHAC], assign and transfer such claims or right of action to [AHAC] . . . and will subrogate [AHAC] to, or will hold in trust for [AHAC] all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of [AHAC].

Id.

On or about May 10, 2002, Pacific Machinery timely commenced administrative procedures and presented a claim for damages to the Department of Navy for review and final decision pursuant to the CDA. On or about September 10, 2002, the Department of Navy issued a written decision via facsimile and U.S. mail denying Pacific Machinery's claim. The decision by the Department of Navy is a final disposition of the claim presented by Pacific Machinery. Pacific Machinery is entitled to and has timely commenced this lawsuit pursuant to subsections 609(a)(1) and (a)(3) of the CDA.

Pursuant to the terms and conditions of the aforesaid policy of insurance issued to Pacific Machinery, AHAC indemnified its insured in the amounts specified in Plaintiffs' Complaint. As a result, both Pacific Machinery and their insurer, AHAC, pursued the instant action to recover the amount of monies paid out by AHAC to its insured as well as the $50,000.00 deductible incurred by Pacific Machinery.

## ARGUMENT

### I. STANDARD OF REVIEW

#### A. RCFC 12(b)(1) MOTION TO DISMISS

When the defendant questions this Court's subject matter jurisdiction with a motion pursuant to RCFC 12(b)(1), the burden is on the plaintiff to establish jurisdiction by the preponderance of the evidence. George W. Kane, Inc. v. United States, 26 Cl. Ct. 655, 657 (1992); American Pac. Roofing Co. v. United States, 21 Cl. Ct. 265, 267 (1990). In deciding a Motion to Dismiss, the Court must accept all factual allegations contained in the Complaint and draw all reasonable inferences in favor of the plaintiff. Kinne v. United States, 21 Cl. Ct. 104, 107 (1990).

#### B. RCFC 56 SUMMARY JUDGMENT

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thomas Creek Lumber & Log Co. v. United States, 36 Fed. Cl. 220, 234 (1996). A dispute over a material fact is one "that might affect the outcome of the suit under the governing law." Anderson 477 U.S. at 248.

### II. THIS COURT MUST ENTERTAIN AHAC'S SUBROGATION CLAIM BECAUSE THERE IS NO GENERAL RULE PROHIBITING A GOVERNMENT CONTRACTOR FROM SUING THE UNITED STATES FOR THE USE AND BENEFIT OF THE INSURER WHICH HAS ABSORBED THE LOSS

Defendant argues that AHAC's subrogation claim should be dismissed because this Court does not have subject matter jurisdiction to hear it. According to Defendant's Brief, AHAC must

demonstrate privity of contract between itself and Defendant in order to properly invoke this Court's jurisdiction. Defendant argues that there is no privy of contract between the United States and AHAC because the insurer was not a party to the contract between the Government and Pacific Machinery, and did not enter into a contract directly with the Government. Defendant also contends that AHAC is not equitably subrogated to Pacific Machinery's claim against the Government because the language in the insurance policy affording AHAC these rights does not constitute a valid assignment under the Anti-Assignment Act. 41 U.S.C. Section 15(a) and 31 U.S.C. Section 3727(a)(1)(b). Thus, Defendant contends that this Court does not have subject matter jurisdiction to entertain AHAC's subrogation claim because AHAC is not in privity of contract with the Government and does not obtain the right of action of its insured because a voluntary assignment through an insurance policy is not permissible under the Anti-Assignment Act.

Plaintiffs do not dispute Defendant's contention that the insurance company must be in privity of contract with the Government in order to sue Defendant directly on a breach of contract claim in this Court. However, the cases cited in Defendant's Brief stand only for the proposition that an insurer may not bring a direct cause of action against the Government absent either privity of contract or a valid assignment under the Anti-Assignment Act. As will be stated infra, AHAC may pursue a subrogation claim against the United States through its insured because it acquires those claims that Pacific Machinery could bring against the Government and which pass by operation of law to AHAC under equitable subrogation. Indeed, the case law in both this Court and the Supreme Court of the United States over the last century support the legal principle that a Government contractor can sue the United States for the use and benefit of its insurance company.

In North Slope Technical, Ltd. v. United States, the United States Court of Federal Claims addressed the issue of whether a Government contractor can sue in this Court for the use and benefit of its insurance company. 27 Fed. Cl. 425 (1992). In North Slope, the contractor alleged that it sustained roughly a half million dollars in property damage as a result of the Government's defective design of a utilidor. North Slope, the contractor, purchased an insurance policy which covered the damages in question from Alaska Pacific Assurance Company. Id. The insurance policy contained standard language subrogating the insurer to any rights of the insured in the event of a loss. Id. Based on this policy, Alaska Pacific paid North Slope the entire amount of damages that it was seeking from the Government. Id. at 426. Thereafter, an action was commenced in the names of both the contractor (North Slope) and the insurance company (Alaska Pacific) against the United States. The Government filed a Motion to Dismiss Alaska Pacific as the named plaintiff, arguing that the insurer was not in privity of contract with the Government and, therefore, had no standing to sue in its own name. Id. The Court granted Defendant's Motion to Dismiss Alaska Pacific as a named Plaintiff, but permitted the subrogation action to proceed in the name of North Slope for the use and benefit of Alaska Pacific. [2]

---

[2] Simultaneous with Plaintiffs' filing of the instant Brief, Plaintiffs are also filing a RCFC 15 Motion for Leave of Court to Amend Pleading. This Motion is designed to permit Plaintiffs to amend their Complaint caption so that it is consistent with the case law cited herein. Defendant does not dispute that Plaintiff, Pacific Machinery, has a direct cause of action against the Government based upon its contractual agreement(s). Plaintiffs argue that, based upon the contract(s), as well as Pacific Machinery's insurance policy with AHAC, Pacific Machinery may sue the Government for the use and benefit of its insurer. Plaintiffs believe that the cases cited above sufficiently underscore this point.

As stated supra, Plaintiffs also agree that AHAC may be dismissed as a party from this lawsuit based upon the arguments presented in Defendant's Brief. However, as previously stated, AHAC's equitable subrogation interests

In reaching its holding, the Court in North Slope cited a number of cases, discussed infra, which allowed "an action to be brought for the use and benefit of the real party in interest, an insurance company, that was not in direct privity of contract with the defendant." Id. at 428. In order for North Slope to proceed for the use and benefit of Alaska Pacific, privity of contract had to be established between North Slope and the United States. Since North Slope and the Government had entered into an agreement, there was privity of contract between these parties. As a result, the Court in North Slope concluded that there is "no general rule prohibiting the contractor from suing for the use and benefit of an insurer which has absorbed the loss." Id. Therefore, the Court permitted that cause of action to proceed in the name of North Slope for the use and benefit of Alaska Pacific.

In Container Co., et al., for the use of the following insurance companies: Firemen's Mutual Ins. Co., et al. v. United States, the United States Court of Claims addressed the issue of whether the Government should still have to bear the cost of fire damage to premises it leased from the plaintiff, a Government contractor, because the plaintiff had insurance coverage that paid for the loss. 116 Ct. Cl. 706 (1950). The Court found that the proximate cause of the fire damage resulted from the Government's overloading of the second floor, which was in violation of the lease. Id. at 719. Since the Government had covenanted not to overload the premises and to repair any ensuing damage because of this language in the lease, the Government was liable for the costs of restoration of the building. Id.

The Court noted that plaintiff, the Container Company, was suing for the use of certain insurance companies, all of which insured the leased premises damaged as a result of the fire. In considering the Government's argument, the Court stated that the Government's obligation to the Container Company under the lease was "not affected by the fact that the Container Company had insurance on the property." Id. at 721. The Court held that the Container Company could pursue an action against the Government for the use of the insurance companies and cited for support language in the applicable insurance policies which allowed them to acquire from the insured any "right of recovery against any party for loss to the extent that payment therefor is made by [the insurer]." Id. at 713. [3] The Court thus noted that the insurers, "by paying for the damage, became subrogated to the insured's contract claim against the United States." Id. at 722.

---

are definitely within this Court's subject matter jurisdiction. Therefore, Plaintiffs request that this Motion for Leave of Court be granted so that they can amend the caption to reflect that Pacific Machinery is suing the Government for the use and benefit of AHAC. Although Plaintiffs already styled this action as a subrogation claim, it appears that amending the caption in this manner will preserve AHAC's rights without running afoul of this Court's jurisdictional rights. In so doing, Plaintiffs contend that the subrogation interests of Pacific Machinery's insurer are more properly before the Court in a manner that is consistent with the cases cited throughout Plaintiffs' Brief.

[3] In Container Company, the Court cited as support for its holding the United States Supreme Court decision in Chicago, St. Louis & New Orleans R.R. v. Pullman Southern Car Co., 139 U.S. 79 (1891). In Pullman, fire damage occurred to Pullman's sleeping cars which had been leased to the railroad. Id. The Court found that the railroad accepted responsibility under its contract with Pullman for unexplained fire loss. Id. Pullman was then reimbursed for the fire damage to its cars by its own insurance company. Id. The Court held that Pullman's receipt of insurance company proceeds did not affect its right to recover from the railroad company the whole amount of the loss for which the Government was responsible under its contract. Id. Interestingly, the Court stated that insurance companies were subrogated to the rights of the insured and "could, in the name of the insured, *or in their joint names*, maintain an action against the railroad company for indemnity" if the company was liable to the insured for the loss of the cars. Id. at 101 (emphasis supplied). This language suggests that either the insured or its insurer could pursue an action directly against the Government. In light of the cases cited in Defendant's Brief, however, this part of the Court's holding may no longer be persuasive. See e.g. Merritt v. United States, 267 U.S. 338, 340-41 (1925) (holding that jurisdiction pursuant to the Tucker Act requires privity of contract between contractor and United States).

The Court concluded that since they had determined the defendant's liability to the Container Company to be in the amount of $110,433.60, and since this amount is less than that paid by the insurance company, the entire recovery will be distributed for the use of the eight insurers involved in the litigation. Id. at 723.

In Nashville Industrial Corp. for the use of Detroit Fire & Marine Ins. Company, et al. v. United States, the United States Court of Claims again addressed the issue of whether suit could be pursued against the Government by the contractor for the use and benefit of that contractor's insurers. 69 Ct. Cl. 443 (1930). In Nashville, the Government contractor sustained fire damage to its property that had been insured by various insurance companies. Id. The Court noted that the lawsuit was based "on the contention that the Government by contract had agreed to save [the plaintiff] and its privies, harmless against any and all loss or damage to the said property. . ." and that "the insurance companies having paid the said loss are entitled by the right of subrogation to recover from the Government the amount so paid." Id. at 455. The Court concluded that it did not "regard the cause of the fire as material" since the Government had covenanted to hold plaintiff harmless against any loss or damage that occurred to the premises. Id. at 459. The Court then concluded that

> ". . . as a matter of law, the insurance companies by the rights of subrogation are entitled to the amounts of insurance paid by them to the plaintiff on account of losses occasioned by the fire of August 10, 1924, and that the Plaintiff is entitled to recover for their use and benefit." Id.

The Court further emphasized that the "mere payment of a loss by the insurer does not indeed afford any defense, in whole or in part, to a person, whose fault has been the cause of the loss, in a suit brought against the latter by the assured." Id. at 460. Rather, the insurer acquired by its insurance payment to its insured a "corresponding right in any damages to be recovered by the assured against a wrong-doer, or other party responsible for the loss." Id. (citing The Potomac, 105 U.S. 630 (1881) ).

Finally, in the United States v. American Tobacco Co., the Supreme Court of the United States addressed a lawsuit initially filed by the plaintiff in the United States Court of Claims in its own name for the use of certain insurance companies to recover the value of Internal Revenue Stamps that had been destroyed by the fire. 166 U.S. 468 (1897). Again, the issue before the Court was whether a Government contractor could sue in its own name for the use and benefit of its insurance companies. Id. The Court emphasized that the insurance companies have no direct right

of action against the Government. Id. at 474. Rather, the insurers must recover in the name of the tobacco company "and by reason of its rights." Id. The Court concluded that the lawsuit was properly brought in the name of the insured for the use of its insurers. Id. In reaching its holding, the Court emphasized that:

> Payment to the owner by the insurer does not bar the right against another party originally liable for the loss, but the [insured], by recovering payment of the underwriters, becomes trustee for them, and by necessary implication, makes an equitable assignment to them of [the insured's] right to recover in his name. Id.

Next, the Court addressed the issue of whether the fact that the insured had already been reimbursed for its property damage by its insurers precluded them from recovering on a cause of action against the Government that was filed for the purpose of reimbursing the insurers for the payments made to their insured. The Court resolved that issue by stating the following:

> Unless, therefore, the Government repaid the value of these stamps so destroyed, or provided other stamps in lieu thereof without any further payment, the Government would be in the position of one who retained money to which it had no equitable right. It would be no answer to that fact to show that some other person had reimbursed the claimant the amount it had paid for the stamps. That would not alter the position of the Government. We cannot think that the payment to the claimant by the insurance companies absolved the Government in the slightest degree from their duty, . . . of paying back the money which it had received and for which it had delivered stamps that had been destroyed by fire before the contemplated use of them had been made. . .
>
> Having received the premiums, [the insurers] had the right to fill their contract, and the tobacco company, after such payment, might still ask the Government to pay to it the value of the stamps in order that it might thereafter repay the insurance companies. The Government loses nothing by payment in such case. *It simply repays money which it has no equitable right to retain.*

Id. at 478. (emphasis supplied).

In light of this case law and the circumstances concerning AHAC's subrogation claim, Pacific Machinery may pursue a direct action against the Government for the use and benefit of

invoking its insurer's subrogation claim. These cases bolster the assertion that Pacific Machinery may bring an action for the use and benefit of the real party in interest, AHAC, notwithstanding that the insurer was not in direct privity of contract with the Government. See North Slope at 428. Since Pacific Machinery entered into an agreement with the Government, Pacific Machinery was in direct privity of contract with Defendant. See Id. So long as Pacific Machinery is in direct privity of contract with the Government, Pacific Machinery may then pursue an action directly against Defendant for the use and benefit of AHAC. Id.

In addition to establishing Pacific Machinery's privity of contract with the Government, AHAC may also pursue a subrogation action directly against the Defendant through its insured based upon the language in its insurance policy with Pacific Machinery. As stated previously, Paragraph 7 of this insurance policy states as follows:

> [i]f in the event of loss or damage, the Insured [Pacific Machinery] shall require any right of action against any individual, firm or corporation, for loss of, or damage to, property covered hereunder, the Insured will, if requested by the company, [AHAC], assign and transfer such claims or right of action to [AHAC] . . . and will subrogate [AHAC] to, or will hold in trust for [AHAC] all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of [AHAC].

Def. App. 68-73.

Based upon the cases decided by both this Court and the United States Supreme Court, the inclusion of this language in the insurance policy also provides a basis for permitting Pacific Machinery to pursue an action for the use and benefit of AHAC. See North Slope at 425; Container Co. at 312. As a result, based upon Pacific Machinery's right to pursue a direct cause of action against the Government and the language in its insurance policy which permits AHAC to pursue the same claim to the extent payments are made to Pacific Machinery, AHAC has met the requirements necessary to become "subrogated to the insured's contract claim against the United States."

Container Co. at 722; See Nashville Industrial Corp. at 455; and American Tobacco Co. at 474. Therefore, AHAC's payment of roughly $180,000.00 to Pacific Machinery to reimburse its insured for the damage done to the Manlift empowers the insurer to pursue an action against Defendant through its insured under the doctrine of equitable subrogation.

In sum, there is no general rule prohibiting Pacific Machinery, a Government contractor, from suing Defendant, The United States, for the use and benefit of its insurer, AHAC, which has absorbed the loss. In permitting Pacific Machinery to pursue an action directly against the Government, and by subsequently recovering from the Government AHAC's payments to its insured for the damage done to the Manlift, Pacific Machinery serves as a trustee for AHAC for this recovery. See American Tobacco at 474. To permit otherwise would insulate the Government from making payment to Pacific Machinery of money which it "has no equitable right to retain." Id. at 478. Therefore, this Court must exercise jurisdiction over AHAC's subrogation claim by permitting Pacific Machinery to pursue their action against the Government for the use and benefit of its insurer. [4]

In light of this case law, Defendant's assertion that AHAC "fails to meet the criteria established to bring an equitable subrogation claim against the Government" because it is not a surety in a contract between Pacific Machinery and Defendant is misplaced. [5] Defendant cites a number of cases for the proposition that only a surety that "takes over contract performance" or "finances completion of the default contract" may proceed under the doctrine of equitable subrogation against

---

[4] Defendant's Brief directly supports this assertion. On pages 11 and 12 of Defendant's Brief, Defendant states that "the only claims that AHAC can bring against the United States are those claims the contractor had against the Government and which pass by operation of law, under equitable subrogation". Based upon the cases cited herein, Plaintiffs believe they have sufficiently demonstrated that Pacific Machinery does have a direct cause of action against the Government and that cause of action pass by operation of law to AHAC under equitable subrogation. As stated supra, these subrogation rights passed by operation of law as soon as the insurer makes payment to his insured and, thus, acquires by "such payment a corresponding right in any damages to be recovered by the assured against a wrongdoer, or other party responsible for the loss." Nashville Industrial Corp. at 460. (citing The Potomac at 630.) Thus, Defendant's Brief supports Plaintiffs' position that Pacific Machinery may sue for the use and benefit of AHAC under the doctrine of equitable subrogation.

[5] Defendant's Brief, page 15.

the Government in the United States Court of Federal Claims. [6] Defendant cites as support the case of Firemen's Fund Ins. Co. v. England for the proposition that the succession of a party to the contractual rights of a Government contractor, "or assignment of rights by operation of law, appears to be the basis upon which the 'non-contractual doctrine of equitable subrogation' is founded". [7] 313 F. 3d. 1344, 1351 (Fed. Cir. 2002). However, the assignment of rights by operation of law that is afforded the insurer under the doctrine of equitable subrogation has nothing to do with whether the insurer is a surety to the contract in question. Rather, the insurer acquires the insured's rights against a contractor by operation of law once payment is made to the insured under an insurance policy. Therefore, AHAC may pursue its subrogation claim through its insured against the Government, *regardless* of whether it meets the criteria of being a surety under federal law.

For these reasons, Plaintiffs take issue with Defendant's contention that this Court "has not recognized an insurer's right to sue upon a general liability insurance contract with a private party that does not constitute a three-party agreement analogous to a suretyship arrangement." [8] Plaintiffs agree that the Court in Federal Insurance did not permit an insurance company to sue the Government in its own name based upon the rights afforded the insurer under the insurance policy in question because the insurer failed to establish privity of contract with the United States. However, the Court, in dicta, stated that plaintiff, Federal Insurance Company, "could have avoided any jurisdictional dispute had it modified the terms of its insurance policy with [its insured] e.g., plaintiff could have refused to extend liability insurance unless [the insured] agreed to either bring suit in its own name for the benefit of Plaintiff or in some way to authorize Plaintiff to bring suit in [the insured's] name. Id at 308. As stated supra, AHAC is permitted to bring an action against the Government through its insured in part because of the aforenoted language in its insurance policy. Therefore, Defendant's Brief cites a case which directly supports AHAC's right to bring suit through

[6] Defendant's Brief, pages 12-15.
[7] Defendant's Brief, page 12.
[8] Defendant's Brief, page 13.

its own insured for the use and benefit of its insurer. As a result, AHAC is permitted to pursue its subrogation claim through Pacific Machinery, based upon both the language in the insurance policy with its insured as well as the rights which pass to AHAC by operation of law under the doctrine of equitable subrogation. Consequently, AHAC again must not be classified as a surety or be involved in a suretyship arrangement with both its insured and the Government in order to invoke its subrogation rights through its insured. For these reasons, Defendant's contention that "an insurer with no direct responsibility for contract performance and no other obligation owed directly to the Government may not maintain suit under equitable subrogation" is erroneous. [9] [Defendant cites in support of this assertion the case of Federal Ins. Co. v. United States, 29 Fed. Cl. 302, 304-05 (1993).]

[9] Defendant's Brief, page 13 (citing Federal Insurance, at 306).

## II. THE "TORT" ALLEGATIONS IN PLAINTIFFS' BREACH OF CONTRACT ACTION AGAINST DEFENDANT MUST NOT BE STRICKEN BECAUSE THEY ARE DIRECTLY CONNECTED TO DEFENDANT'S CONTRACTUAL OBLIGATIONS

Defendant argues that the Court should grant partial summary judgment in their favor with regard to certain allegations in Plaintiffs' Complaint because they are based solely in tort, and not in contract. Defendant argues that since certain allegations in Plaintiffs' Complaint are based solely on tortious conduct and because these same allegations do not stem from Plaintiffs' contract(s) with the Government, this Court is without jurisdiction to hear these claims. According to Defendant's Brief, summary judgment is appropriate in their favor on these claims because there is no genuine issue of material fact as to whether these allegations stem from any contractual agreement with Defendant.

However, Plaintiffs emphasize that there definitely is a genuine issue of material fact as to which documents actually constitute the contract or contracts in question. In Paragraph 15 of Plaintiffs' Complaint, Plaintiffs allege that Defendant's breach of contract with Pacific Machinery stems in part from the following:

A. Defendant's failure to properly train operators of the Manlift and to ensure that it was operated at all times by a fully qualified operator;

C. Defendant's failure to follow the manufacturer's instructions and/or recommendations for safe use of the Manlift;

D. Defendant's failure to use, operate, maintain, repair and care for the Manlift in a careful and prudent manner;

E. Defendant's failure to keep and maintain the Manlift in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies that were applicable on or about May 20, 2000

The wording in these allegations comes directly from the August 30, 1999 Rental Contract prepared by Pacific Machinery which contained certain terms and provisions which spell out the aforenoted responsibilities at issue. Def. App. 57. Defendant cannot dispute this fact nor can

Defendant dispute that the Rental Contract was signed by Nephi Akina, a naval shipyard planner working for Defendant. As a result, Plaintiffs argue that this Court does have jurisdiction to hear these "tortious" claims since they stem directly from a contractual arrangement between Pacific Machinery and Defendant.

Defendant's argument that these allegations in Plaintiffs' Complaint are tortious in nature and do not stem from any contractual arrangement with Defendant because no such duties arise from contract no. N00604-00-P-A015 is misleading. As stated supra, Plaintiffs do not dispute that these allegations do not stem from Contract No. N00604-00-P-A015, since the language comes directly from the aforenoted August 30, 1999 contractual agreement. Plaintiffs, however, do dispute that Contract No. N00604-00-P-A015 is the only document which speaks to the contractual responsibilities among the parties at issue and involved in this action. Plaintiffs stress that the parties' disagreement over whether contract no. N00604-00-P-A015 is the sole contract at issue and whether the August 30, 1999 "Rental Contract" is either a separate valid contract or part of the parties' contractual arrangements for the Manlift in question underscores that there is a genuine issue of material fact regarding whether the Government's contractual obligations prohibited the allegedly tortious conduct cited in Plaintiffs' Complaint. For these reasons, summary judgment is inappropriate at this juncture and will not be appropriate for adjudication until further discovery concerning these issues is completed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss AHAC's subrogation claim. Further, Plaintiffs also respectfully request that this Court deny Defendant's Motion for Partial Summary Judgment.

Respectfully submitted,

BY:/s/ nicholas g karambelas___
NICHOLAS G. KARAMBELAS
Sfikas & Karambelas, LLP
1201 Pennsylvania Avenue, N.W.
Suite 300
Washington, DC 20004
Tel. (202) 661-4614

Attorney of Record for Plaintiffs

Date: January 19, 2005

OF COUNSEL:

BY: Brian E. Tetro
BRIAN E. TETRO
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103