IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-1906C |
| v. | ) | (Judge Block) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

In our November 24, 2004 motion to dismiss or, in the alternative, motion for partial summary judgment, we established that the Court lacked subject matter jurisdiction to entertain plaintiff American Home Assurance Company's ("AHAC's") complaint because AHAC is neither in privity of contract with the Government, nor equitably subrogated to the rights of a contractor who does have privity. Thus, AHAC's status as plaintiff is not within the limited subject matter jurisdiction of this Court, and this party should be dismissed.

In addition, we established that partial summary judgment should be entered in the Government's favor upon the grounds that there is no genuine issue of material fact, and defendant is entitled to judgment as a matter of law, upon those allegations in the complaint which sound in tort and are not directly connected to the Government's obligations pursuant to the contract at issue.

In response to our motion, AHAC argues that the complaint should not be dismissed provided that Pacific Machinery, the contractor in this matter, is permitted to bring this cause of

action in its own name, and for the use and benefit of its insurer, AHAC. Pl. Br. at 14-15.[1] Accordingly, AHAC filed a motion for leave to amend the complaint to reflect that Pacific Machinery is the proper plaintiff in this matter. For the reasons stated below, we do not oppose this motion.

AHAC also argues that the Government is not entitled to partial summary judgment upon certain tort claims because a genuine issue of material fact exists as to whether the Government is contractually bound to the terms of a delivery invoice giving rise to such claims. Pet. Br. at 19-20. As set forth below, the Court should reject AHAC's argument and grant the Government's motion because it is undisputed that the delivery invoice was signed by a naval employee lacking actual express authority to bind the Government in contract and, thus, the Government is not bound to the terms of the invoice as a matter of law. Accordingly, there is no direct connection between certain claims in the complaint sounding solely in tort, and the Government's obligations pursuant to the terms of the contract at issue.

## ARGUMENT

### I. The Complaint Is Within The Subject Matter Jurisdiction Of This Court Provided That Pacific Machinery, Which Possesses Privity Of Contract With The Government, Is The Sole Plaintiff

In order to avail itself of this Court's jurisdiction as the sole plaintiff, AHAC, Pacific

[1] "Pl. Br. at __" refers to a specific page in Plaintiff's Response to Defendant's Motion to Dismiss, filed electronically on January 24, 2004 (the page numbers we cite refer specifically to the electronic version of plaintiff's response, and not the courtesy paper copy of plaintiff's response, which is paginated differently than the electronic version.) "Pl. Motion for Leave at __" refers to a specific page of Plaintiff's Motion For Leave to Amend Complaint. “Compl. ¶ ___” refers to a paragraph of the complaint filed on August 11, 2003. “Def. App. ___” refers to a page within defendant's appendix. "DPFUF ¶ __" refers to a specific paragraph in Defendant's Proposed Findings of Uncontroverted Fact.

Machinery's general liability insurer, must first establish that it is equitably subrogated to Pacific Machinery's rights because it lacks privity of contract with the Government. As discussed in our moving brief, this Court has not recognized an insurer's right to sue as the sole plaintiff upon a general liability insurance contract with a private party that does not constitute a three-party agreement analogous to a suretyship arrangement. Federal Insurance Co. v. United States, 29 Fed. Cl. 302, 304-05 (1993); see also First Hartford Corp. Pension Plan & Trust v. United States, 42 Fed. Cl. 599, 611-12 (1998), rev'd upon other grounds, 194 F.3d 1279 (Fed. Cir. 1999) (shareholder may not sue as a surety where it has not taken over contract performance owed to the Government, but merely purports to take over the right to sue the Government).

In its motion for leave to amend the complaint, AHAC stated that "[p]laintiffs agree that plaintiff, AHAC, should be dismissed as a party to this litigation." Pl. Motion for Leave at 1. The Government concurs that Pacific Machinery is the proper plaintiff in this case.[2]

In its brief, AHAC relies upon North Slope Technical, Ltd. v. United States, 27 Fed. Cl. 425 (1992) to support its position that a contractor may pursue a cause of action against the Government for the use and benefit of its insurer. Pl. Br. at 11-12. In North Slope, the court stated that "no general rule prohibit[s] the contractor from suing for the use and benefit of an insurer which has absorbed the [contractor's] loss," and, significantly, permitted the cause of action because "the government has assumed the risk of loss caused by [its own] defective

[2] In the complaint, Pacific Machinery requests $50,000.00, the amount of its insurance deductible, because it was reimbursed for property damage by AHAC. Compl. ¶ 23. Ultimately, the application of the collateral source rule, which prohibits Pacific Machinery from reaping a double recovery upon its claim, depends upon the Court's determination of whether 1) the Government is liable for breach of contract, and 2) whether there is a tortious or negligence component to such breach, should it be found. See LaSalle Talman Bank, F.S.B. v. United States, 317 F.3d 1363, 1372-73 (Fed. Cir. 2003).

specifications." North Slope Technical, Ltd. v. United States, 27 Fed. Cl. 425, 429 (1992). In North Slope, because the Government contractually bore the risk of loss, the court suggested that it would be inequitable for the Government to "attempt to insinuate itself into the position of de facto insured under" the contractor's policy. Id. at 426.

Indeed, in all of the cases cited for the proposition that a contractor may sue the Government upon behalf of its insurer, both by the court in its decision in North Slope and the plaintiff in its brief, the risk of loss was expressly allocated to the Government either by statute or contractual agreement. See United States v. American Tobacco Co., 166 U.S. 468, 476 (1897) (action by contractor upon behalf of insurer permitted where statute provided that the Government shall "reimburse the person who had bought and paid for internal revenue stamps which had been destroyed"); S.W. Aircraft Inc. v. United States, 213 Ct. Cl. 206, 551 F.2d 1208, 1211-12 (Ct. Cl. 1977) (risk of loss clause in contract provided that Government would be liable for damage caused when helicopter flew in certain conditions); Container Co. v. United States, 116 Ct. Cl. 706, 90 F. Supp. 689, 691-92 (Ct. Cl. 1950) (court held that lease agreement expressly allocated risk of loss to Government where damage resulted from overloading); Nashville Industrial Corp. v. United States, 69 Ct. Cl. 443 (Ct. Cl. 1930) (contractor may bring suit upon behalf of insurer where contract provided that Government would hold contractor harmless for all property damage).

By agreeing that Pacific Machinery is a proper plaintiff to pursue its claim in this Court, the Government does not in any way concede that the contract at issue in this case allocated the risk of loss for property damage to the Government. The issue of which party bears the risk of loss in this case is a question of law which must be resolved in further proceedings.

II. Plaintiffs' Tort Claims Should Be Dismissed Because They Are Not Directly Connected To The Parties' Contractual Obligations

In our moving brief, we established that certain claims in the complaint sound solely in tort. These include:

> A. Defendant's failure to properly train operators of the Manlift and to ensure that it was operated at all times by a fully qualified operator . . .
>
> C. Defendant's failure to follow the manufacturer's instructions and/or recommendations for safe use of the Manlift;
>
> D. Defendant's failure to use, operate, maintain, repair and care for the Manlift in a careful and prudent manner;
>
> E. Defendant's failure to keep and maintain the Manlift in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies . . .

Compl. ¶ 15. Because the above claims sound in tort, and are not directly connected to the Government's obligations pursuant to the terms of the contract at issue, the Court should enter partial summary judgment in favor of the Government dismissing these claims.

For the Court to possess jurisdiction to entertain a tortious breach of contract claim, "there must be a direct connection between the Government's contractual obligations and the alleged tortious conduct." H.H.O., Inc. v. United States, 7 Cl. Ct. 703, 706 (1985) (emphasis added); see also C.B.C. Enterprises, Inc. v. United States, 24 Cl. Ct. 1, 5 (1991) (tort claim dismissed where "no nexus alleged between the Government's allegedly tortious breach of these implicit conduct obligations and any express term of the contract"); Jeppesen Sanderson, Inc. v. United States, 19 Cl. Ct. 233, 237 (1990) (the Court must find "a close connection, or nexus," between the contract provisions and alleged tortious conduct).

None of the above claims directly relate to a specific contractual duty owed by the Government according to the terms of the contract at issue. Nevertheless, AHAC asserts that the

terms of a delivery invoice signed by Nephi Akina, a naval shipyard planner, when Pacific Machinery delivered the manlift to the Navy, became part of Contract No. N00604-00-P-A015. Pet. Br. at 19-20, Def. App. 57-58. AHAC concedes that "these allegations do not stem from Contract No. N00604-00-P-A015, since the language comes directly from the aforenoted August 30, 1999 contractual agreement," and, therefore, "there is a genuine issue of material fact regarding whether the Government's contractual obligations prohibited the allegedly tortious conduct." Pl. Br. at 20. AHAC's argument is incorrect. Whether the delivery invoice is a valid "contractual agreement" is a question of law, not a question of fact. It is undisputed that the invoice was not signed by a warranted contracting officer, DPFUF ¶ 8, and, therefore, it is not a valid contract as a matter of law.

AHAC bases its opposition to our motion for partial summary judgment solely upon its assertion that the August 30, 1999 delivery invoice constitutes a valid contract between the parties. Pl. Br. at 19-20. To establish the existence of either an express or implied-in-fact contract with the United States, AHAC must demonstrate: (1) mutual intent to contract; (2) consideration; (3) lack of ambiguity in an offer and acceptance; and (4) actual authority on the part of the Government representative to bind the United States in contract. Harbert/Lummus Agrifuels Projs. v. United States, 142 F.3d 1429, 1434 (Fed. Cir. 1998); City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990). Even assuming that AHAC has established the first three elements, it cannot establish that the invoice was signed by an employee with actual authority to bind the Government in contract.

Mr. Akina, who signed the delivery invoice, is an employee at the Pearl Harbor Naval Shipyard and lacks warranted contracting authority. See Attachment A (Declaration of James

Powers).[3] Mr. Akina's signature does not contractually bind the Government to the terms stated upon the invoice. The Government is not bound by the acts of agents beyond the scope of their actual authority. Contractors "dealing with the United States must inform themselves of a representative's authority," and "take[] the risk of accurately ascertaining the authority of the agents who purport to act for the Government." Harbert/Lummus, 142 F.3d at 1432 (citations omitted); Town of Floyd v. United States, 34 Fed. Cl. 170, 173-74 (1995).

The Government, therefore, has no direct contractual obligation to Pacific Machinery to perform the responsibilities underlying claims A, C, D, and E of paragraph 15 of the complaint. Because these tort claims are not directly connected to the Government's obligations pursuant to the terms of the contract, the Government is entitled to partial summary judgment upon these claims as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court enter partial summary judgment in the Government's favor.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

---

[3] Attached to this brief is a declaration obtained from James Powers, Deputy Director, Regional Contracting Department, Fleet and Industrial Supply Center, Pearl Harbor.

S/ TODD M. HUGHES
TODD M. HUGHES
Assistant Director

S/ KELLY B. BLANK
KELLY B. BLANK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St, N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Of Counsel:

ELIZABETH RIVERA
Counsel
Fleet and Industrial Supply
Center
1942 Gaffney St.
Suite 100
Pearl Harbor, HI 96860
Tele: (808) 473-4144
Fax: (808) 473-2797

February 28, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on February 28, 2005, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ KELLY B. BLANK