# In The United States Court of Federal Claims

**NOT FOR PUBLICATION**
**No: 03-1906 C**
**May 2, 2005**

---

**PACIFIC MACHINERY, INC.,**

***Plaintiff*,**

**v.**

**THE UNITED STATES,**

***Defendant*.**

---

*Nicholas G. Karambelas*, Sfikas & Karambelas, LLP, Washington, DC, for the plaintiff.

*Kelly B. Blank*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for the defendant.

## OPINION AND ORDER

**Block, *Judge*.**

The original plaintiffs to this action, American Home Assurance Company and its insured, Pacific Machinery, Inc., filed a claim for breach of contract against the United States under the Contract Disputes Act. The contracting officer issued a final decision denying compensation, and the plaintiffs appealed to this court for relief. The dispute stems from damage sustained to a piece of heavy machinery that Pacific Machinery leased to the Navy for use at the Pearl Harbor Naval Shipyard. American Home Assurance Company was the insurer of that machinery and compensated Pacific Machinery for its loss, minus the deductible. Pacific Machinery sued to recover the amount of its insurance deductible, and American Home Assurance sued to recover the insurance payments made to its client.

On November 24, 2004 the government filed a Motion to Dismiss or, In the Alternative, Motion for Partial Summary Judgment. The Motion to Dismiss challenged American Home Assurance Company's standing to sue defendant as Pacific Machinery's subrogee because the insurer lacked privity of contract with the government and had not either completed contractual performance on behalf of the insured nor financed the insured's completed performance. The government's position reflected established precedent in this circuit. *See Insurance Co. of the West v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001) ("We have specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the government: when the surety takes over contract performance or when it finances completion of the defaulted contract."). In

response, plaintiffs filed a motion for leave to amend the complaint that was not objected to by defendant and was subsequently granted by the court. The complaint was thereafter amended to reflect Pacific Machinery, Inc. as the sole plaintiff in this case, both on its own behalf and to assert the rights of its insurer that absorbed the loss. *See generally North Slope Tech., LTD v. United States*, 27 Fed. Cl. 425, 429 (1992) ("There is, consequently, no general rule prohibiting the contractor from suing for the use and benefit of an insurer which has absorbed the loss."). Accordingly, defendant's motion to dismiss will be denied as moot because, while a subrogated insurer generally cannot bring an action directly against the government, in some circumstances the insured may do so on behalf of its insurer.

Defendant's alternative motion for partial summary judgment seeks dismissal of four of plaintiff's breach of contract claims on the ground that those claims are premised upon a delivery invoice that was never signed by an agent of the government that had actual contracting authority. As a result, defendant argues that there is no binding contract giving rise to these four claims and that they should be dismissed because, without a contractual predicate, the claims are nothing more than mere tort claims for negligence over which this court lacks jurisdiction. Because the court concludes that plaintiff has failed to demonstrate an issue of fact as to the contracting authority of the agent that signed the invoice, defendant's motion for partial summary judgment will be granted.

## I. Background

Pacific Machinery, Inc. leased a "manlift," a self-propelled aerial work platform (Grove Model AMZ131XT, Serial Number 46173), to the Pearl Harbor Naval Shipyard. On May 20, 2000 a naval employee was operating the manlift when an accident occurred that caused the manlift to fall over. Def.'s Proposed Findings of Uncontroverted Facts ("DPFUF") at 3. The naval employee operating the manlift was killed in this accident. *Id.* The manlift itself was severely damaged. *Id.*

This manlift had been delivered to the Pearl Harbor Naval Shipyard on August 30, 1999. At that time, Pacific Machinery's delivery invoice was signed by Nephi Akina, a naval shipyard planner, indicating that he had accepted delivery of the manlift. Def.'s App. at 57-58; Pl.'s Resp. to Mot. for Part. Summ. J. ("Pl.'s Resp.") at 9. The top of the invoice bears the words "RENTAL CONTRACT." Above Mr. Akina's signature, the invoice contains small pre-printed form text that states: "I warrant to be the LESSEE shown above and/or have the authority to sign as agent for LESSEE" and that "I have read and understood the terms and conditions on the face and reverse of this agreement." Def.'s App. at 57. On the reverse of this invoice, in even smaller print, was a pre-printed clause that stated: "Lessee shall use, operate, maintain, repair and care for the Equipment in a careful and prudent manner, and in accordance with the recommendations of the manufacturer of the Equipment, and shall keep and maintain the equipment in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies." *Id*. at 58.

When the accident occurred in May 2000, the lease for the manlift was governed by Contract No. N00604-00-P-A015. *See* Def.'s App. at 1. That contract was originally signed by a naval contracting officer on October 8, 1999, *see id.*, but the contract did not at that time cover the manlift involved in the accident (Serial No. 46173). *See id.* at 3. From the time that manlift was first delivered to defendant, it was originally covered by Contract No. N00-604-99-P-E358 (lease period of August 30, 1999 through October 29, 1999) and then Contract No. N00604-00-P-A263 (lease period of November 1, 1999 through December 31, 1999). Def.'s Mot. at 4; Def.'s App. at 57, 64.

On January 1, 2000, defendant modified Contract No. N00604-00-P-A015, the principal contract in this case, to include the manlift (Serial No. 46173) that was damaged during the lease period included in that contract. Def.'s Mot. at 4; Def.'s App. at 40-41. Among others, that contract (No. N00604-00-P-A015) incorporated by reference a clause that stated: "Except for reasonable wear and tear, the Government agrees to return the rented property in as good condition as when received, provided, however, if the rented property is operated by an employee of the contractor, the Government shall not be liable for damage to the rented property incident to such operation." Def.'s App. at 2, 10.

On May 10, 2002, Pacific Machinery filed a claim with the Department of the Navy under the Federal Tort Claims Act (FTCA) alleging that:

> the government and its employees were negligent in operating the Grove AMZ131XT manlift by failing to perform proper and/or required procedures prior to or while operating te equipment. [Defendant] also failed to properly train operators of the manlift and failed to warn them of the hazards involved in operating the manlift. As a result of the government's negligent conduct, the equipment was severely damaged subjecting Pacific Machinery to substantial financial losses.

*Id.* at 61. This claim was denied because the claims officer concluded that "[f]ederal employees did not cause the damage or injury through negligence in the course and scope of federal employment." *Id.* at 62.

Pacific Machinery also filed a claim with the contracting officer under the Contract Disputes Act. On September 10, 2002, that claim was denied for two primary reasons. First, the contracting officer concluded that four of the contractual claims Pacific Machinery asserted were premised on terms included only in the delivery invoice signed by Mr. Akina and not in any valid contract. *Id.* at 64-67. According to the contracting officer, Mr. Akina was not a contracting officer and he lacked proper authority to bind the government. *Id.* at 64. Accordingly, the terms of the delivery invoice could not be binding on the government as either a contract or a contract modification. *Id.* Second, the contracting officer concluded that the government had not breached its obligation to return the equipment to Pacific Machinery in the condition received because "[t]he manlift was damaged due to improper maintenance and testing performed by Pacific Machinery" itself. *Id.* at 65.

On August 11, 2003 Pacific Machinery filed its complaint in this case, appealing the decision of the contracting officer. Pacific Machinery alleged that the government breached the contract due to each of the following:

> A. Defendant's failure to properly train operators of the Manlift and to ensure that it was operated at all times by a fully qualified operator;
>
> B. Defendant's failure to perform pre-operation inspections and/or test safety functions of the manlift prior to operation. . . .
>
> C. Defendant's failure to follow the manufacturer's instructions and/or recommendations for safe use of the Manlift;

D. Defendant's failure to use, operate, maintain, repair and care for the Manlift in a careful and prudent manner;

E. Defendant's failure to keep and maintain the Manlift in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies that were applicable on or about May 20, 2000.

F. Defendant's failure to deliver the Manlift at Defendant's sole cost an expense to Pacific Machinery's place of business in as good condition as originally received, and in good mechanical and working order;

G. Defendant's failure to continue monthly rental payments to the date on which the contract expired; and

H. Otherwise failing to adhere to all provisions of the contract.

Amended Compl. at 4. The complaint indicated that Pacific Machinery had sustained an uninsured loss of $50,000.00 (the insurance deductible) and that its insurer, American Home Assurance Company, had indemnified Pacific Machinery for a total of $181,137.84, but the insurer received only $30,150 in salvage value for the damaged manlift. Amended Compl. at 5-6. On November 24, 2004, defendant filed its motion to dismiss or, in the alternative, motion for partial summary judgment.

## II. Discussion

### A. Motion to Dismiss

As an initial matter, when the complaint in this case was first filed it named both Pacific Machinery, Inc. and its insurer, American Home Assurance Company ("AHAC"), as the plaintiffs. Defendant challenged the ability of AHAC to sue on its own behalf as Pacific Machinery's subrogee because AHAC was never in privity of contract with defendant. Defendant argued that the provisions of the Anti-Assignment Act would prohibit a voluntary assignment of Pacific Machinery's own rights to sue defendant to AHAC. *See* 41 U.S.C. § 15(a) and 31 U.S.C. § 3727(a)(1), (b); *Fireman's Fund Ins. Co. v. England*, 313 F.3d 1344, 1349-50 (Fed. Cir. 2002); Def.'s Mot. at 11. Citing Federal Circuit precedent, defendant argued that there are "two circumstances in which a surety may succeed to the contractual rights of a contractor against the government: when the surety takes over contract performance or when it finances completion of the defaulted contract." Def.'s Mot. at 12 (quoting *Insurance Co. of the West v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001). Here, defendant noted that AHAC had not taken over or financed completion of Pacific Machinery's contract, and therefore was unable to avail itself of an equitable subrogation to Pacific Machinery's right to sue the government directly. Def.'s Mot. at 11-15.

Plaintiff conceded this argument. Pl.'s Resp. at 13-14 n. 2 ("Plaintiffs also agree that AHAC may be dismissed as a party from this lawsuit based upon the arguments presented in Defendant's Brief."). However, it subsequently amended its complaint to reflect Pacific Machinery as the sole plaintiff in this case, both for its own benefit and for the use and benefit of its insurer. *See* Amended

Compl.; Pl.'s Resp. at 13-14 n. 2. Plaintiff cited case law that suggests it might be able to sue defendant directly for losses ultimately passed on to its insurer. Pl.'s Resp. at 13-21; *see also North Slope Tech., Ltd. v. United States*, 27 Fed. Cl. 425, 428 (1992) (noting "no general rule prohibiting the contractor from suing for the use and benefit of an insurer which has absorbed the loss").

In turn, defendant did not oppose plaintiff's amended complaint and conceded that Pacific Machinery, as the sole plaintiff, would have proper standing to sue for breach of contract. *See* Def.'s Reply to Pl.'s Resp. at 1-2 ("The complaint is within the subject matter jurisdiction of this court provided that Pacific Machinery, which possesses privity of contract with the government, is the sole plaintiff."). In light of these concessions and plaintiff's amended complaint, defendant's motion to dismiss is **DENIED** as moot because AHAC is no longer a direct party to this case and it appears that Pacific Machinery, as the sole party to this case, may have standing to recover for the loss ultimately sustained by AHAC.

**B. Motion for Partial Summary Judgment**

Turning to defendant's motion for partial summary judgment, defendant argues that four of the grounds on which plaintiff seeks breach of contract, Claims A, C, D and E noted above,[1] are in fact "claims which sound solely in tort" because there is no contractual predicate for those claims. Def.'s Mot. at 15. While defendant concedes that this court has exercised "jurisdiction over claims which, although perhaps somewhat 'tortious' in nature, are essentially based upon the breach of a contractual obligation," defendant argues that in this case there is no contractual obligation giving rise to those claims. *Id.* at 17 (quoting *DeRoo v. United States*, 12 Cl. Ct. 356, 362 (1987)). That is so because the "contract" terms upon which plaintiff relies to establish its claims are found not in Contract No. N00604-00-P-A015 but instead only in the delivery invoice that was signed by Mr. Akina, who lacked contracting authority and could not therefore contractually bind defendant to any terms printed on the reverse side of the delivery invoice. *Id.* at 17-18. Defendant does *not* challenge

---

[1] For convenience, plaintiff's four challenged claims, noted above, are repeated:

> A. Defendant's failure to properly train operators of the Manlift and to ensure that it was operated at all times by a fully qualified operator;
>
> . . .
>
> C. Defendant's failure to follow the manufacturer's instructions and/or recommendations for safe use of the Manlift;
>
> D. Defendant's failure to use, operate, maintain, repair and care for the Manlift in a careful and prudent manner; [and]
>
> E. Defendant's failure to keep and maintain the Manlift in compliance with and in conformance to all applicable laws, statutes, ordinances, rules and regulations, and insurance policies that were applicable on or about May 20, 2000.

Amended Compl. at 4.

the remaining claims.[2]

**1. Jurisdiction and Standard of Review**

The Court of Federal Claims has jurisdiction over claims arising under the Contract Disputes Act ("CDA"). *See* 41 U.S.C. § 609(a)(1); 28 U.S.C. § 1491(a)(2). The "final decision" of a contracting officer on a CDA claim may be appealed directly to this court. 41. U.S.C. § 609. The contracting officer's decision is reviewed *de novo*. *Id.*

A claim under the CDA must be premised upon either an express or an implied contract. 41 U.S.C. § 602(a). If a claim is not premised upon an express or implied contract, jurisdiction may still be proper in this court, but the plaintiff bears the burden of establishing that jurisdiction pursuant to one of the express waivers of sovereign immunity that can generally be found in the Tucker Act. *See* 28 U.S.C. § 1491; *United States v. Testan*, 424 U.S. 392, 397, 399 (1976). Absent congressional consent to entertain a claim against the United States, this court generally lacks authority to grant relief. *Id.* The Tucker Act contains a limited waiver of sovereign immunity for any claim "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). Here, plaintiff has asserted that its claim arises under the CDA because it involves a breach of an express contract. Accordingly, as one of its jurisdictional predicates, plaintiff must affirmatively establish the express contract upon which its claims rely.

Defendant's motion for partial summary judgment really challenges the jurisdictional predicate to four of plaintiff's breach of contract claims. Simply put, defendant argues that there is no contract giving rise to these four claims because the government agent who signed the delivery invoice lacked contracting authority. Since plaintiff maintains that it is only this delivery invoice that gives rise to the four challenged claims, these claims would fail for want of jurisdiction in this court if there is in fact no enforceable contract. *See* Pl.'s Resp. at 22-23 ("The wording in these allegations [that are challenged by defendant's motion for partial summary judgment] comes directly from the August 30, 1999 Rental Contract prepared by Pacific Machinery which contained certain terms and provisions which spell out the aforenoted responsibilities at issue.").

Even though defendant's motion challenges the jurisdictional predicate of plaintiff's claims—and could therefore be construed as a motion to dismiss for lack of subject matter

[2] Defendant did not seek dismissal of all of plaintiff's claims and, to the extent that challenges were not raised to those claims the court does not address them in this opinion and order. *See* Def.'s Mot. at 16 n.5 ("For the purposes of this motion only, the Government does not request dismissal of plaintiffs' claims relating to defendant's alleged 'failure to perform pre-operation inspections,' defendant's alleged 'failure to deliver the Manlift at Defendant's sole cost and expense to Pacific Machinery . . . in as good condition as originally received,' or defendant's alleged 'failure to continue monthly rental payments to the date on which the contract expired.' [Amended] Compl. ¶ 15."). However, it is helpful to note that the individual claims that are challenged here would seem to be subsumed by plaintiff's remaining claims that are based, in part, on the terms of Contract No. N00604-00-P-A015.

jurisdiction—the Federal Circuit has instructed that it is proper to treat this type of challenge as a motion for summary judgment, which looks to the merits of the plaintiff's claims.

> In Tucker Act jurisprudence, neat division between jurisdiction and merits has not proved to be so neat. In these cases, involving suits against the United States for money damages, the question of the court's jurisdictional grant blends with the merits of the claim. This mixture has been a source of confusion for litigants and a struggle for the courts.

*Fisher v. United States*, No. 02-5082, slip op. at 6 (Fed. Cir. 2005). Here, the court will ultimately determine whether jurisdiction is proper in light of the Tucker Act and the CDA. However, it will do so under the guise of summary judgment because the key issue is whether the plaintiff has presented a genuine issue of material fact as to whether jurisdiction in this court is proper for the four challenged claims. *See, e.g.*, *Moden v. United States*, No. 04-5092 at 10 (Fed. Cir. 2005) ("Although the Court of Federal Claims stated that dismissal was for lack of subject-matter jurisdiction, it is clear that the Court of Federal Claims concluded that the [plaintiffs] failed to identify a genuine issue of material fact sufficient to avoid summary judgment. Thus, we treat the dismissal as a grant of summary judgment.").

Under the Rules of the Court of Federal Claims, summary judgment is appropriate on any issue when the moving party is entitled to judgment as a matter of law and there is an absence of any genuine issue of material fact. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party, here the defendant, is not required to prove the absence of all material issues of fact, but needs only to point to an absence of evidence for a required element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1985); *Hansen v. United States*, – Fed. Cl. – , No. 02-21L, 2005 WL 832332 at *18 (Apr. 11, 2005). If the moving party does properly identify an absence of evidence in the nonmoving party's case, the burden shifts to the nonmoving party, here the plaintiff, to affirmatively establish that element of its case or place issues of fact relevant to that element into dispute. *Celotex*, 477 U.S. at 325. In such a circumstance, the nonmoving party must go beyond its own pleadings or mere assertions (including memoranda to the court) to establish an issue of fact. *Id.* at 322. If it fails to do so, summary judgment in favor of the moving party is appropriate. *Id.*

**2. Analysis**

The four claims that defendant challenges are generally tortious in nature because they rely in some way or another on the breach of a duty owed by defendant to plaintiff. A claim based on the careless performance of some duty owed to the plaintiff is one that sounds in tort, over which this court lacks jurisdiction. *See, e.g.*, *Florida Rock Indus. v. United States*, 791 F.2d 893, 898 (Fed. Cir. 1986); *Somali Dev. Bank v. United States*, 205 Ct. Cl. 741, 749 (1974); *Corrales v. United States*, 56 Fed. Cl. 283, 286 (2003); *Detroit Housing Corp. v. United States*, 55 Fed. Cl. 410, 413 (2003); *Lion Raisins, Inc. v. United States*, 54 Fed. Cl. 427, 434 (2002). "Nevertheless, the Tucker Act consistently has been interpreted to allow jurisdiction over claims which, although perhaps somewhat 'tortious' in nature, are essentially based upon the breach of a contractual obligation." *H.H.O., Inc. v. United States*, 7 Cl. Ct. 703, 706 (1985) (citing *Chain Belt Co. v. United States*, 127 Ct. Cl. 38, 54 (1953); *see also Mega Const. Co. v. United States*, 29 Fed. Cl. 396, 478 (1993).

If a claim arises primarily from a contractual undertaking, then jurisdiction in this court may be proper even if the claim results from the defendant's negligent performance of the contract. *H.H.O., Inc.*, 7 Cl. Ct. at 706 (citing *Bird & Sons, Inc. v. United States*, 190 Ct. Cl. 426, 431 (1970). To satisfy jurisdictional requirements, though, the "tortious breach of contract" must be *directly* connected to the government's contractual obligations. *Id.* (citing *L'Enfant Plaza Props., Inc v. United States*, 227 Ct. Cl. 1, 11 (1981)). "It is not jurisdictionally sufficient if the alleged tortious conduct is merely 'related' in some general sense to the contractual relationship between the parties." *Id.* (citations omitted); *see also Mega Const. Co.*, 29 Fed. Cl. at 478. In other words, there must be a "sufficient nexus" between the contractual obligation and the tortious conduct to establish jurisdiction in this court. *H.H.O., Inc.*, 7 Cl. Ct. at 707.

Here, plaintiff explicitly rests its four challenged claims on the "Rental Contract" that Mr. Akina, the Naval shipyard planner, signed upon receipt of the manlift when it was delivered to the naval base on August 30, 1999. According to plaintiff, the alleged breaches of contract that defendant challenges "come[] directly from the August 30, 1999 Rental Contract prepared by Pacific Machinery which contained certain terms and provisions which spell out the aforenoted responsibilities at issue" that defendant is alleged to have breached. Pl.'s Resp. at 22-23. "Plaintiffs do not dispute that these allegations do not stem from Contract No. N00604-00-P-A015, since the language comes directly from the aforenoted August 30,1999 contractual agreement." *Id.* at 23.

The problem that plaintiff has is that it bears the burden of establishing the existence of the express contract upon which its claims rely, in order to establish jurisdiction under both the Tucker Act and the CDA. In turn, "[i]t is well established that the government is not bound by the acts of its agents beyond the scope of their actual authority." *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed. Cir. 1998) (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). Therefore, as part of its burden of proving the existence of a contract, plaintiff bears the burden of proving that the government representative upon whose conduct it relied had "actual authority to bind the government in contract." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (citing *Merrill*, 332 U.S. at 384; *Juda v. United States*, 6 Cl. Ct. 441, 452 (1984)); *see also Harbert/Lummus*, 142 F.3d at 1432. "Contractors dealing with the United States must inform themselves of a representative's authority and the limits of that authority." *Harbert/Lummus*, 142 F.3d at 1432 (citing *Merrill*, 332 U.S. at 384). Not only must contractors inform themselves of the agent's proper authority, but "anyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority." *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).

Actual authority may be express or implied. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989). A government employee possesses express authority to bind the government when the Constitution, a statute, or a regulation unambiguously grants him such authority. *Starflight Boats v. United States*, 48 Fed. Cl. 592, 598 (2001). A government employee possesses implied authority to bind the government when such authority is an integral part of the duties assigned to him. *Roy v. United States*, 38 Fed. Cl. 184, 189 (1997). Contracting authority is integral to a government employee's duties when the government employee could not perform his or her assigned tasks without such authority and the relevant agency regulation does not grant such authority to other agency employees. *Id*. at 189-90.

In this case, defendant argues that Mr. Akina lacked any authority to enter into a binding contract on behalf of the government, and therefore the delivery invoice that he signed on August 30, 1999 could not give rise to a binding contract between Pacific Machinery and defendant. To support this argument, defendant has supplied the signed declaration of James B. Powers, the Deputy Director of the Regional Contracting Department, Fleet and Industrial Supply Center, Pearl Harbor, Hawaii. Def.'s Rep. Att. A (Declaration of James B. Powers). According to Mr. Powers' declaration, "Nephi Akina is an employee of the Pearl Harbor Naval Shipyard. He was not a contracting officer on August 30, 1999, when he signed a delivery receipt. Mr. Akina did not have a contract warrant, hence, he had no authority to purchase any services from Pacific Machinery or to bind the government in any contract." *Id.*

Thus, under the standard set out in *Celotex*, defendant has met its burden to "point[] out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Accordingly, summary judgment on defendant's behalf would be appropriate if plaintiff, "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of truth at trial." *Id.* at 322. Therefore, unless plaintiff here can "make a sufficient showing" that Mr. Akina had actual authority to bind the government when he signed the delivery invoice, or that at some later time a government agent with proper contracting authority ratified the terms of the delivery invoice, defendant is entitled to judgment as a matter of law. *Id.* at 323.

Plaintiff, however, has failed to rebut defendant's allegation that Mr. Akina lacked contracting authority. Plaintiff seems to argue that Mr. Akina's signature on the delivery invoice, alone, is sufficient to establish his authority. *See* Pl.'s Resp. at 23 ("Defendant cannot dispute . . . that the Rental Contract was signed by Nephi Akina, a naval shipyard planner working for Defendant."). This implication of authority, however, is not enough to satisfy plaintiff's burden of production at this stage of proceedings. The court finds that plaintiff has failed to present sufficient evidence that Mr. Akina had either express or implied authority to commit the government to a contractual relationship that included the terms of the August 30, 1999 delivery invoice. Plaintiff has presented no evidence that Mr. Akina had express authority to bind the government, nor has it demonstrated that such authority is integral to the completion of his duties as a "shipyard planner." Indeed, the court has not been presented with any information regarding the job description or regular duties of a shipyard planner. Plaintiff has been on notice since at least September 10, 2002, when the contracting officer denied plaintiff's CDA claim, that Mr. Akina's contracting authority was in question and that his actual authority would impact plaintiff's claim. *See* Def.'s App. at 64 (Contracting Officer's Final Decision) ("The delivery receipt is not a valid Government contract, Nephi Akina is not a Contracting Officer, and does not have proper authority to bind the Government."). Therefore, it was appropriate to require plaintiff to come forward at this time and "make a sufficient showing" of Mr. Akina's actual authority, if it so existed. *Celotex*, 477 U.S. at 323.

Conceivably, plaintiff's challenged claims might survive had they been later ratified by a government agent that did possess actual contracting authority. Plaintiff seems to imply as much by arguing that even if the August 30, 1999 delivery invoice does not pass muster as a stand-alone contract, it later became "part of the parties' contractual arrangements for the Manlift in question."

Pl.'s Resp. at 23. The problem with this argument, however, is that Contract No. N00604-00-P-A015 which governed the lease of plaintiff's manlift does incorporate several documents by reference, but none of those documents include (nor reference) the August 30, 1999 delivery invoice that Mr. Akina signed. *See* Def.'s App. at 2. Contract No. N00604-00-P-A015, along with subsequent modifications, appears to be a fully integrated agreement.

The question of whether a contract is integrated is one of law. *Sylvania Elec. Prods., Inc. v. United States*, 458 F.2d 994, 1007 n.9 (Ct. Cl. 1972). The parol evidence rule, of course, "prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing." 11 WILLISTON ON CONTRACTS § 33:1 (4th ed. 1999). Extrinsic evidence, such as the delivery invoice in this case, is not admissible to add to or modify a fully integrated contract. *McAbee Const., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed. Cir. 1996). While the parties may rely on extrinsic evidence to establish whether or not the contract actually is an integrated agreement, *see id.*, plaintiff is still confronted with the initial problem that its delivery invoice was not signed by a government agent with actual authority to bind the government.

Whether or not the controlling contract was fully integrated, and regardless of whether plaintiff argues that there is an issue over "whether . . . the August 30, 1999 'Rental Contract' is . . . part of the parties' contractual arrangements for the Manlift," Pl.'s Resp. at 23, the fact remains that plaintiff has failed to present any evidence whatsoever that the delivery invoice was ever explicitly ratified or incorporated into the lease contract by any government official with actual contracting authority. The actual lease contract and its modifications appear to be fully integrated agreements, and plaintiff has failed to present facts that might suggest otherwise.

## III. Conclusion

For the foregoing reasons, defendant's motion to dismiss is **DENIED AS MOOT**. Furthermore, the court concludes that the August 30, 1999 delivery invoice upon which plaintiff predicates four of its "breach of contract" allegations was not, in fact, a binding contract on the government. This is so because the government has established the fact that Mr. Akina lacked contracting authority, and plaintiff has failed to rebut that evidence. As a result, plaintiff has failed to carry its burden of production to demonstrate that jurisdiction over these challenged claims is proper in this court. Defendant's motion for partial summary judgment is therefore **GRANTED** and those four claims, A, C, D and E of paragraph 15 of the Complaint, are **DISMISSED**.

**IT IS SO ORDERED.**

s/*Lawrence J. Block*

**Lawrence J. Block**
**Judge**